26 A.3d 446

WHIRLPOOL PROPERTIES, INC., PLAINTIFF–APPELLANT,
v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT–
RESPONDENT.

Argued May 4, 2011—Decided July 28, 2011.

144 

*Paul H. Frankel* argued the cause for appellant (*Morrison & Foerster*, attorneys; *Mr. Frankel* and *Mitchell A. Newmark*, of counsel and on the briefs).

*Marlene G. Brown*, Senior Deputy Attorney General, argued the cause for respondent (*Paula T. Dow*, Attorney General of New Jersey, attorney; *Lewis A. Scheindlin*, Assistant Attorney General, of counsel).

*Michael A. Guariglia* argued the cause for amici curiae New Jersey State Chamber of Commerce and New Jersey Business & Industry Association (*McCarter & English*, attorneys).

*Marc A. Simonetti* submitted a brief on behalf of amicus curiae Council on State Taxation (*Sutherland Asbill & Brennan*, attorneys; *Mr. Simonetti* and *Jeffrey A. Friedman*, on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

We granted leave to appeal to consider a facial challenge to the constitutionality of *N.J.S.A.* 54:10A–6(B) (the "Throw–Out Rule" or "Rule"), whose application, while it was in effect, increased a multi-state taxpayer's New Jersey Corporate Business Tax (CBT) liability. *See N.J.S.A.* 54:10A–1 to –41. Although the Rule has since been repealed, *see L.* 2008, *c.* 120, it had substantial impact on multi-state entities such as the taxpayer-appellant in this matter. Whirlpool Properties, Inc. (Whirlpool), a Michigan corporation with its principal place of business in Michigan, raised the present constitutional challenge in its complaint, filed with the Tax Court, appealing a CBT deficiency assessment of $24,883,399.24 imposed by the State Director of the Division of Taxation ("Director") with respect to tax years 1996 through 2003. In tax years 2002 and 2003, the Director's application of the Throw–Out Rule resulted in substantially heightened assessments against Whirlpool. In the present challenge, Whirlpool claims the Rule violates the Due Process Clause, *U.S. Const.* amend. XIV, § 1, and the Commerce Clause, *U.S. Const.* art. I, § 8, cl. 3.

The constitutionality of using a formula apportionment method for deriving local taxable income has been long established. *See Container Corp. of Am. v. Franchise Tax Bd.,* 463 *U.S.* 159, 165, 103 *S.Ct.* 2933, 2940, 77 *L.Ed.*2d 545, 553 (1983). The formula apportionment method apportions a corporation's income between the taxing jurisdiction and the rest of the world. *Ibid.* New Jersey's apportionment methodology utilizes a three-factor formula that weighs a multistate corporate taxpayer's property, payroll and sales, a recognizably common, and constitutionally unremarkable, general approach.[1] However, this facial challenge focuses pointedly on the less-common Throw–Out Rule, and its effect on the sales factor in New Jersey's formula.

---

[1] That formula recently has been changed and will become a single sales fraction formula following a three-year phase-in starting January 1, 2012. *See L.* 2011, *c.* 59, § 1.

Without application of the Throw–Out Rule, the sales fraction is calculated by dividing the taxpayer's New Jersey receipts by *total* receipts of the corporate taxpayer. *N.J.S.A.* 54:10A–6(B). The Throw–Out Rule modifies the sales fraction, transforming the fraction into one that divides New Jersey receipts only by *taxed* receipts. *L.* 2002, *c.* 40. The effect is consistent: By throwing out receipts from the denominator, the sales fraction always increases, causing the apportionment formula and the taxpayer's resultant CBT liability to New Jersey to increase.

Critical to the analysis of the constitutionality of New Jersey's Throw–Out Rule is the fact that the receipts that may be thrown out fall into two types: (1) receipts that are not taxed because the state lacks the jurisdiction to tax due to insufficient business activity by the taxpayer in that state, and (2) receipts that are not taxed because a state has chosen not to have an income or similar business activity tax, so the degree of business activity by the taxpayer in that state is irrelevant to the imposition or not of such a tax.

A court is duty-bound to give to a statute a construction that will support its constitutionality. We find that the Throw–Out Rule may operate constitutionally, under a fair apportionment analysis, when applied to untaxed receipts from those states that lack jurisdiction to tax the corporate taxpayer due to the insufficient business activity in that state, but not when applied to receipts that are untaxed due to a state's determination not to have an income or similar business activity tax. We therefore construe the Throw–Out Rule so as to limit the receipts that may be thrown out to untaxed receipts from those states that lack jurisdiction to tax due to the insufficient business activity by the taxpayer in that state. Based on the limiting construction that we give to the statute, we conclude that the Throw–Out Rule is facially constitutional when implemented in such fashion for corporate taxpayers whose activities have a substantial nexus to New Jersey. Accordingly, we affirm, as modified, the judgment of the Appellate Division.

## I.

■ Fundamental constitutional principles limit a state's ability to tax out-of-state entities. Reduced to its most straightforward formulation, a state simply cannot "'tax value [that is] earned outside its borders.'" *Container Corp., supra,* 463 *U.S.* at 164, 103 *S.Ct.* at 2939, 77 *L.Ed.*2d at 552 ("Under both the Due Process and the Commerce Clauses of the Constitution, a State may not, when imposing an income-based tax, 'tax value earned outside its borders.'" (quoting *ASARCO Inc. v. Idaho State Tax Comm'n,* 458 *U.S.* 307, 315, 102 *S.Ct.* 3103, 3108, 73 *L.Ed.*2d 787, 794 (1982))). Because many major corporations have operations "in more than one State, [ ] arriving at precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice." *Ibid.*

One method of deriving local taxable income is through the utilization of a formula apportionment method, which apportions a corporation's income "between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction." *Id.* at 165, 103 *S.Ct.* at 2940, 77 *L.Ed.*2d at 553. Subject to some constraints, the United States Supreme Court has ruled it permissible, under Due Process and Commerce Clause considerations, to use a formula apportionment method to derive local taxable income for multistate corporations. *See id.* at 182, 103 *S.Ct.* at 2949, 77 *L.Ed.*2d at 564. New Jersey's corporate business tax scheme follows that general approach. Accordingly, a full explanation of that scheme at the outset will provide necessary context for analysis of the issues this case presents.

### A.

New Jersey's CBT requires every domestic or foreign corporation to

pay an annual franchise tax ... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.

[*N.J.S.A.* 54:10A–2.]

The tax is assessed based on a corporation's entire net worth and entire net income. *N.J.S.A.* 54:10A–5. For taxpayers with regular places of business outside of New Jersey, the portion of entire net worth and entire net income that is subject to New Jersey tax is "determined by multiplying such entire net worth and entire net income, respectively, by an allocation factor which is the property fraction, plus twice the sales fraction plus the payroll fraction and the denominator of which is four[.]" [2] *N.J.S.A.* 54:10A–6. The property fraction is determined by dividing the average value of the taxpayer's property in New Jersey by the average value of the taxpayer's property everywhere. *N.J.S.A.* 54:10A–6(A). Similarly, the payroll fraction is determined by dividing the taxpayer's New Jersey payroll by total payroll. *N.J.S.A.* 54:10A–6(C).

Without the Throw–Out Rule, the sales fraction is calculated by dividing the taxpayer's New Jersey receipts by total receipts. *N.J.S.A.* 54:10A–6(B). Receipts from sales, services, rents, royalties, and other business receipts in New Jersey are "divided by the total amount of the taxpayer's receipts, similarly computed, arising during such period from all sales of its tangible personal property, services, rentals, royalties and all other business receipts, whether within or without the State." [3] *N.J.S.A.* 54:10A–6(B). The Throw–Out Rule modifies the sales fraction by excluding receipts assigned to jurisdictions in which the taxpayer is not subject to income or similar business activity taxes [4] from the denominator of the sales fraction. The Business Tax Reform Act of 2002 amended the CBT to include the Throw–Out Rule by

---

[2] The CBT uses the term "allocation" while the federal system uses the more prevalent term of "apportionment" for the same concept.

[3] Ours is a "destination rule" state, meaning that income generated by a sale of a product or service is taxed in the state where it is ultimately shipped or performed, not where it originated. *N.J.S.A.* 54:10A–6.

[4] For ease of discussion we shall refer to all such taxes as income taxes.

adding the following to the final paragraph of *N.J.S.A.* 54:10A–6(B):

provided however, that if receipts would be assigned to a state, a possession or territory of the United States or the District of Columbia or to any foreign country in which the taxpayer is not subject to a tax on or measured by profits or income, or business presence or business activity, then the receipts shall be excluded from the denominator of the sales fraction.

[*L.* 2002, *c.* 40, § 8, repealed by *L.* 2008, *c.* 120, § 2; *but see L.* 2002, *c.* 40, § 6, repealed by *L.* 2008, *c.* 120, § 1 (limiting tax liability caused by exclusion of receipts for certain taxpayers).]

The sponsor's statements indicated that the purpose of the Throw–Out Rule was to counteract tax evasion by closing tax loopholes:

Tax loopholes allow multi-state corporations to transfer their profits to related out-of-State and offshore companies. Many of these companies use these loopholes to reduce their net income to little or nothing, thus avoiding [ ] New Jersey taxation.

The corporation business tax does not reach some out-of-state companies that do business here. Instead, these companies are able to take advantage of the state's lucrative market, extensive infrastructure, and geographic prominence, while paying no corporate taxes to New Jersey.

[A. 2501 (Sponsors' Statement), 210th Leg. (N.J. June 6, 2002); S. 1556 (Sponsor's Statement), 210th Leg. (N.J. May 30, 2002).]

In describing the specific need for the Throw–Out Rule, both the Assembly Budget Committee and the Senate Budget and Appropriations Committee gave the same explanation:

The more goods that are shipped out of New Jersey, the lower [the sales] factor is. Some of those sales are made in states where the corporation is not subject to tax because the corporation has no operations in those states. These sales are typically referred to as "nowhere sales" because they result in income being assigned so that it is taxed nowhere. The bill closes this loophole by "throwing out" the "nowhere sales" from the denominator of the sales fraction, which causes more of the income of the corporation to be assigned to states where the corporation actually has operations.

[A. Budget Comm., Statement to A., No. 2501 (June 27, 2002); *see* S. Budget & Appropriations. Comm., Statement to S., No. 1556 (June 27, 2002).][5]

---

[5] The Committees also amended the bills to include the words "or business presence or business activity." *L.* 2002, *c.* 40, § 8. This was "to clarify that receipts that are subject to a tax on business presence or business activity, such as a tax on gross receipts, in another state will not be excluded from the denominator of the sales fraction in determining the portion of income allocable

With the enactment of the Throw–Out Rule, the sales fraction was transformed; formerly a ratio of New Jersey receipts to *total* receipts, it became a ratio of New Jersey receipts to *taxed* receipts. When a receipt is thrown-out, the sales fraction always increases, causing the apportionment formula and the resultant CBT liability to increase.

If the apportionment formula leads to an allocation that "does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State," the Director may adjust the allocation factor by a variety of means, such as excluding or including other factors and assets. *N.J.S.A.* 54:10A–8. Notably, *N.J.S.A.* 54:10A–8 ("Section 8 Relief") authorizes the Director to exercise discretion to adjust a taxpayer's apportionment formula.

In sum, New Jersey employs a three-factor apportionment formula that weighs a multi-state corporate taxpayer's property, payroll and sales. For purposes of this facial challenge, our focus is on the Throw–Out Rule's effect on the "sales factor." We turn next to the intersection of that Rule with appellant's tax assessment.

### B.

Whirlpool is a corporation that is both incorporated under the laws of and is located in the State of Michigan; it has no physical presence in New Jersey, and it conducts all of its activities outside of New Jersey. The company owns and manages brand names that it licenses to its parent, Whirlpool Corporation (a New Jersey taxpayer), as well as to other affiliates and third parties. Whirlpool earns its income based on the number of goods bearing its brand that are produced by licensee plants, none of which are located in New Jersey. Whirlpool did not file any tax returns in

to New Jersey." A. Budget Comm., Statement to A., No. 2501 (June 27, 2002); *see* S. Budget & Appropriations. Comm., Statement to S., No. 1556 (June 27, 2002).

New Jersey and did not pay CBT from 1996 to 2003. During that time Whirlpool's parent did not deduct the royalties that it paid to Whirlpool when reporting to New Jersey for New Jersey tax purposes.

The Director of the Division of Taxation issued Whirlpool an assessment after calculating its allocable income based on information gleaned from Whirlpool's related entities. Using the Throw–Out Rule, the Division allocated to New Jersey 29.2572 percent and 41.8647 percent of Whirlpool's 2002 and 2003 income, respectively. By comparison, before the Throw–Out Rule came into application, the portion of Whirlpool's income that was allocated to New Jersey for tax years 1996 through 2001 ranged between .9546 percent and 1.3337 percent.

Whirlpool, and three other companies that have since settled,[6] brought actions in the Tax Court appealing their tax assessments and challenging the constitutionality of the Throw–Out Rule. When each plaintiff and the Division filed cross-motions for summary judgment on the issue of the facial constitutionality of the Throw–Out Rule, the Tax Court consolidated the matters to dispose of the common issue.

The Tax Court determined first that the proper standard for a facial challenge to a tax statute's constitutionality is the one established in *United States v. Salerno*, which upholds a statute if it can be shown to operate constitutionally in some, even if not all or most, instances. *Pfizer Inc. v. Dir., Div. of Taxation*, 24 *N.J.Tax* 116, 123–24 (2008) (citing *United States v. Salerno*, 481 *U.S.* 739, 107 *S.Ct.* 2095, 95 *L.Ed.2d* 697 (1987); *Gen. Motors Corp. v. City of Linden*, 150 *N.J.* 522, 532, 696 *A.2d* 683 (1997)). The Tax Court then turned to the Throw–Out Rule's viability under the four-pronged *Complete Auto* test. *Id.* at 125–26 (citing *Complete Auto Transit, Inc. v. Brady*, 430 *U.S.* 274, 279, 97 *S.Ct.* 1076, 1079, 51 *L.Ed.2d* 326, 331 (1977)). Based on the parties' emphasis

---

[6] Pfizer Inc., the companion company in this consolidated appeal, settled prior to oral argument.

in argument, the court's analysis predominantly focused on whether the tax is fairly apportioned and fairly related to the services provided by the taxing state. *Id.* at 128 n. 5.

In the end, the Tax Court found three general circumstances where the Throw–Out Rule operates constitutionally, satisfying the *Salerno* standard:

> (1) where the income being excluded from the denominator of the sales fraction is generated in whole or in part by activities in New Jersey, (2) where the application of the Throw[-O]ut Rule has no material effect on the sales fraction because the income generated in the nontaxing state is insignificant in relation to the total income of the corporation, and (3) where the property and payroll fractions substantially temper the impact of the sales fraction on the allocation factor (even though the sales fraction is double-weighted under *N.J.S.A.* 54:10A–6).
>
> [*Id.* at 132.]

The Tax Court further noted that the Director's obligation to provide Section 8 Relief, when necessary to ensure fair allocation of income under the Due Process and Commerce Clauses, "in itself provides a basis for sustaining the facial constitutionality of a statute that might, under certain circumstances, result in an unfair apportionment of income to this State." [7] *Id.* at 138.

Whirlpool filed a motion for leave to appeal, which the Appellate Division denied; however, we granted leave to appeal and remanded the matter to the Appellate Division for its consideration of the merits. *Whirlpool Props., Inc. v. Dir., Div. of Taxation,* 196 *N.J.* 591, 960 *A.*2d 388 (2008). On remand, the Appellate Division affirmed, holding that the Throw–Out Rule is facially constitutional. *Whirlpool Props., Inc. v. Dir., Div. of Taxation,* 25 *N.J.Tax* 519, 524 (App.Div.2010).

The panel agreed that the *Salerno* standard applied in this facial challenge to the tax statute. *Id.* at 528. It then addressed the alleged facial due process violation, observing that apportionment formulas "need not avoid every possibility" of taxing extra-

---

[7] Before the lower courts, the plaintiff corporations and amici argued also that the Throw–Out Rule violated the Supremacy Clause, *U.S. Const.* art. VI, cl. 2. That argument was rejected by both the Tax Court and the Appellate Division. Whirlpool does not advance the argument here.

territorial income, but "need only avoid attributing income to the taxing state 'out of all appropriate proportion to the business transacted by the appellant in that state.'" *Id.* at 531 (quoting *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell*, 283 *U.S.* 123, 135, 51 *S.Ct.* 385, 389, 75 *L.Ed.* 879, 908 (1931)). The panel was unable to identify an example of an allocation formula struck down as facially unconstitutional, "much less authority to indicate the exact percentage of disproportion that would have to be the likely result in at least the majority of cases" for such a finding. *Id.* at 531–32. Rather, it observed that the "variation among businesses in organization ... inhibits the prospect of actually demonstrating that a given formula will yield allocations for most out-of-state taxpayers that are unconstitutionally disproportionate." *Id.* at 532. The panel explained that Whirlpool did not contest that it "had a nexus with New Jersey that was independent of [its] unitary business, and [did] not contest that [its] sales to non-taxing states were part of that business." *Ibid.* The panel concluded that "[t]hose were the only conditions needed for New Jersey to have a constitutionally sufficient nexus to those sales." *Ibid.*

With respect to the Commerce Clause claims, the Appellate Division addressed whether the Throw–Out Rule discriminated against interstate commerce. Applying established principles, the Appellate Division concluded that the Throw–Out Rule

> does not expose any income to multiple taxation ... and it does not tax in-state and out-of-state sales in a discriminatory manner. Thus, although the [Throw–Out] Rule might reduce or eliminate the relative financial benefit to the taxpayer of sales in non-taxing states compared to sales in taxing states, it does not make them less remunerative. It avoids the "forbidden impact on interstate commerce" of "pressuring" out-of-state corporations to increase their business activity here at the expense of activity elsewhere.
>
> ... The only constraint in devising a tax system is that "no State may discriminatorily tax the products manufactured or the business operations performed in any other State[.]" The Throw[-O]ut Rule does not facially do so. [*Id.* at 534–35 (citations omitted).]

We granted leave to appeal to Whirlpool on October 21, 2010. *Whirlpool Props., Inc. v. Dir., Div. of Taxation*, 204 *N.J.* 35, 6

*A.*3d 439 (2010).[8]

## II.

Whirlpool's appeal takes issue with application of the *Salerno* standard for determining a statute's facial constitutionality. It argues that *City of Chicago v. Morales* disapproved of *Salerno's* generous formulation of the standard for facial constitutionality. 527 *U.S.* 41, 55 n. 22, 119 *S.Ct.* 1849, 1858, 144 *L.Ed.*2d 67, 79–80 (1999). Indeed, Whirlpool asserts that if the *Salerno* standard is applicable to tax discrimination cases, a tax statute could never be found to be facially unconstitutional because a discriminatory tax always applies constitutionally to the favored local interest. Further, Whirlpool asserts that the Supreme Court has sustained facial discrimination challenges in tax cases even where the statute was not unconstitutional in all circumstances, citing *Fulton Corp. v. Faulkner,* 516 *U.S.* 325, 346, 116 *S.Ct.* 848, 861, 133 *L.Ed.*2d 796, 814 (1996), and *Kraft General Foods, Inc. v. Iowa Department of Revenue & Finance,* 505 *U.S.* 71, 82, 112 *S.Ct.* 2365, 2372, 120 *L.Ed.*2d 59, 69 (1992).

Whirlpool views the Throw–Out Rule as systematically subjecting commerce in states without income tax to a higher burden than commerce in taxing states and, thus, contends that the Throw–Out Rule does not treat the "similarly-situated" similarly. And, it claims that the Throw–Out Rule results in tax that is not fairly apportioned. According to Whirlpool, the Rule causes not merely imprecise taxation; rather, the Throw–Out Rule precisely expands the sales fraction to attribute to New Jersey *any* transaction that takes place outside of New Jersey that is not taxed by another jurisdiction for any reason. Whirlpool also asserts that there is no nexus between the thrown-out transactions and New Jersey.

[8] *See also Pfizer, Inc. v. Dir., Div. of Taxation,* 204 *N.J.* 34, 6 A.3d 439 (2010) (companion case to this appeal where leave to appeal granted, but matter settled thereafter).

The Director, on the other hand, argues that New Jersey already has adopted the *Salerno* standard for facial challenges to a statute's constitutionality, citing *Linden, supra,* 150 *N.J.* at 532, 696 *A.*2d 683. He additionally contends that *Salerno* has not been overruled by *City of Chicago, supra,* 527 *U.S.* 41, 119 *S.Ct.* 1849, 144 *L.Ed.*2d 67, or diminished by *Kraft, supra,* 505 *U.S.* 71, 112 *S.Ct.* 2365, 120 *L.Ed.*2d 59. Thus, he argues that *Salerno* and *Linden* remain good law and provide the correct constitutional standard for reviewing a tax statute.

According to the Director, apportionment formulas are facially valid from a due process perspective as long as the taxing state has a nexus with the taxpayer and the activity being taxed. He points out that apportionment formulas, including those very different from the benchmark three-factor formula of averaging property, payroll, and sales, have been found to meet constitutional requirements. *Trinova Corp. v. Mich. Dep't of Treasury,* 498 *U.S.* 358, 111 *S.Ct.* 818, 112 *L.Ed.*2d 884 (1991). In a facial challenge, the Director emphasizes that a plaintiff must show that a tax is "out of all appropriate proportion to the business transacted" in the State or leads "to a grossly distorted result." *Container Corp., supra,* 463 *U.S.* at 170, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556; *see Hans Rees', supra,* 283 *U.S.* 123, 51 *S.Ct.* 385, 75 *L.Ed.* 879. "Insignificant" variations and imprecision in apportionment of income are acceptable, according to the Director, because merely showing that a formula *"may* result in taxation of some income that did not have its source in the taxing state" is insufficient to facially invalidate a statute on constitutional grounds. *See Container Corp., supra,* 463 *U.S.* at 169–70, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556.

Against such standards, the Director argues that the Throw–Out Rule meets Due Process and Commerce Clause dictates. He contends that the Throw–Out Rule fairly and rationally includes a fractional share of the untaxed profit that multi-state corporations enjoy in New Jersey from "nowhere" income. The Director asserts that the Rule is not discriminatory in nature, and Whirl-

pool has failed to provide any factual support to show otherwise in this facial challenge. He urges, moreover, that the Rule does not subject sales outside the State to greater taxation than sales within the state, nor does it result in subjecting income to multiple taxation. He further claims that, because the Throw–Out Rule provides for Section 8 and other relief, the Rule does not automatically result in increased CBT liability for multi-state corporate taxpayers.

## III.

### A.

New Jersey is not unique in using a formula apportionment method of taxing multi-state corporations; many states follow a similar approach. *See id.* at 162–63, 103 *S.Ct.* at 2939, 77 *L.Ed.*2d at 551 (recognizing use of methodology). The practice has a long history. *See, e.g., Butler Bros. v. McColgan,* 315 *U.S.* 501, 62 *S.Ct.* 701, 86 *L.Ed.* 991 (1942); *Erie Ry. Co. v. Pennsylvania,* 88 *U.S.* (21 *Wall.*) 492, 22 *L.Ed.* 595 (1875). Under this method, the receipts, property, and income of a "unitary business," both in-state and out-of-state, are included in the tax base and then multiplied by a state's apportionment formula to determine what portion of the tax base the state may tax. In other words, this method

> calculates the local tax base by first defining the scope of the "unitary business" of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that "unitary business" between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction.

> [*Container Corp., supra,* 463 *U.S.* at 165, 103 *S.Ct.* at 2940, 77 *L.Ed.*2d at 553.]

In sum, a taxing state using the apportionment formula method need not show a specific connection with any particular income-generating activity. The link is supplied by a state's connection to the unitary business operations as a whole and, thus, the state may tax its proportionate share of the taxpayer's entire income.

■ The constitutionality of the formula apportionment method is well established. *Id.* at 165, 103 *S.Ct.* at 2940, 77 *L.Ed.*2d at 553. Further, as the Supreme Court's "Commerce Clause analysis of apportionment formulas has made clear, the inclusion of income in the pre-apportioned tax base of a state apportionment formula does not amount to extra territorial taxation." *Shell Oil Co. v. Iowa Dep't of Revenue,* 488 *U.S.* 19, 30–31, 109 *S.Ct.* 278, 284, 102 *L.Ed.*2d 186, 199. It is the apportioned fraction of total income that is taxed, not any particular source of income in the tax base. *Ibid.* The Court has acknowledged limitations inherent in the use of a formula apportionment method. *See Container Corp., supra,* 463 *U.S.* at 192, 103 *S.Ct.* at 2954, 77 *L.Ed.*2d at 570 (describing allocation of income among jurisdictions as akin to "slicing a shadow"). The method, "unlike separate accounting, does not purport to identify the precise geographical source of a corporation's profits; rather, it is employed as a rough approximation of a corporation's income that is reasonably related to the activities conducted within the taxing State." *Moorman Mfg. Co. v. Bair,* 437 *U.S.* 267, 273, 98 *S.Ct.* 2340, 2344, 57 *L.Ed.*2d 197, 204 (1978). Nonetheless, this "rough approximation" is constitutionally satisfactory.

The Supreme Court has approved a variety of apportionment formula types. *See Container Corp., supra,* 463 *U.S.* at 164, 103 *S.Ct.* at 2939, 77 *L.Ed.*2d at 552; *see, e.g., Trinova Corp., supra,* 498 *U.S.* 358, 111 *S.Ct.* 818, 112 *L.Ed.*2d 884 (approving three-factor test); *Moorman, supra,* 437 *U.S.* 267, 98 *S.Ct.* 2340, 57 *L.Ed.*2d 197 (approving single-factor test). The most prevalent type is the three-factor formula that averages property, payroll, and sales factors and is described as "something of a benchmark against which other apportionment formulas are judged." *Container Corp., supra,* 463 *U.S.* at 170, 103 *S.Ct.* at 2943, 77 *L.Ed.*2d at 556 (citations omitted). "The standard three-factor formula can be justified as a rough, practical approximation of the distribution of either a corporation's sources of income or the social costs which it generates." *Gen. Motors Corp. v. District of Columbia,* 380 *U.S.* 553, 561, 85 *S.Ct.* 1156, 1161, 14 *L.Ed.*2d 68, 73 (1965).

Since no specific apportionment formula is required and formulas diverging from the three-factor formula have been sanctioned, states have some leeway when crafting apportionment formulas.

"The Constitution does not 'invalidat[e] an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State[.]' " *Container Corp., supra,* 463 *U.S.* at 169–70, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556 (citations omitted) (emphasis in original). Indeed, the Supreme Court has never held an apportionment formula unconstitutional on its face. *See* Jerome Hellerstein & Walter Hellerstein, *State Taxation,* ¶ 8.12[1] (3d ed. 2008). The main restriction is that the "factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated." *Container Corp., supra,* 463 *U.S.* at 169, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556.

■ *Complete Auto* marked a modernization in tax jurisprudence, shedding past formalisms and establishing a new four-part test to analyze apportionment formulas for constitutional infirmities. *See D.H. Holmes Co., Ltd. v. McNamara,* 486 *U.S.* 24, 30, 108 *S.Ct.* 1619, 1623, 100 *L.Ed.*2d 21, 27 (1988) (explaining that "*Complete Auto* abandoned the abstract notion that interstate commerce 'itself' cannot be taxed by the States"). While the *Complete Auto* test originally addressed Commerce Clause concerns, it has been interpreted to also encompass Due Process requirements. *Trinova Corp., supra,* 498 *U.S.* at 373, 111 *S.Ct.* at 828, 112 *L.Ed.*2d at 904 (citations omitted). The test will sustain a state tax using a formula apportionment method "[ (1) ] when the tax is applied to an activity with a substantial nexus with the taxing State, [ (2) ] is fairly apportioned, [ (3) ] does not discriminate against interstate commerce, and [ (4) ] is fairly related to the services provided by the State." *Complete Auto, supra,* 430 *U.S.* at 279, 97 *S.Ct.* at 1079, 51 *L.Ed.*2d at 331.

### B.

■ Turning to the first prong of the test, the substantial nexus showing reflects the Due Process and Commerce Clause

requirement that "a State may not, when imposing an income-based tax, 'tax value earned outside its borders.'" *Container Corp., supra,* 463 *U.S.* at 164, 103 *S.Ct.* at 2939, 77 *L.Ed.*2d at 552 (quoting *ASARCO, supra,* 458 *U.S.* at 315, 102 *S.Ct.* at 3108, 73 *L.Ed.*2d at 796). Rather, "there [must] be some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Allied–Signal, Inc. v. Dir., Div. of Taxation,* 504 *U.S.* 768, 777, 112 *S.Ct.* 2251, 2258, 119 *L.Ed.*2d 533, 545 (1992) (quoting *Miller Bros. Co. v. Maryland,* 347 *U.S.* 340, 344–45, 74 *S.Ct.* 535, 539, 98 *L.Ed.* 744, 748 (1954)) (internal quotation marks omitted).

> The requisite "nexus" is supplied if the corporation avails itself of the "substantial privilege of carrying on business" within the State; and "[t]he fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction."
>
> [*Mobil Oil Corp. v. Comm'r of Taxes,* 445 *U.S.* 425, 437, 100 *S.Ct.* 1223, 1231, 63 *L.Ed.*2d 510, 520–21 (1980) (alteration in original) (quoting *Wisconsin v. J.C. Penney Co.,* 311 *U.S.* 435, 444–45, 61 *S.Ct.* 246, 250, 85 *L.Ed.* 267, 271 (1940)).]

Although Due Process and Commerce Clause concerns overlap, their requirements are not perfectly co-extensive. "A tax may be consistent with due process and yet unduly burden interstate commerce." *Quill Corp. v. North Dakota,* 504 *U.S.* 298, 313 n. 7, 112 *S.Ct.* 1904, 1914, 119 *L.Ed.*2d 91, 107 (1992) (citations omitted). Thus, the nexus required for Due Process is merely the purposeful direction of activities to the state, whereas the Commerce Clause requires more of a connection. A state cannot "tax a purported 'unitary business' unless at least some part of it is conducted in the State." *Container Corp., supra,* 463 *U.S.* at 166, 103 *S.Ct.* at 2940, 77 *L.Ed.*2d at 553 (citations omitted).

With regard to the second prong, there are two requirements to fair apportionment: internal consistency and external consistency. *Container Corp., supra,* 463 *U.S.* at 169, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556. An apportionment formula is internally consistent when, "if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed." *Ibid.* This component "looks to the structure of the

tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Okla. Tax Comm'n v. Jefferson Lines, Inc.,* 514 *U.S.* 175, 185, 115 *S.Ct.* 1331, 1338, 131 *L.Ed.*2d 261, 271–72 (1995). The internal consistency analysis examines the hypothetical functioning of a tax formula, not its real world effects on a taxpayer. *See, e.g., Moorman, supra,* 437 *U.S.* at 278–79, 98 *S.Ct.* at 2347, 57 *L.Ed.*2d at 208 (approving single-factor apportionment test notwithstanding risk of actual double taxation because most other states were using three-factor tests).

External consistency, the "second and more difficult requirement," *Container Corp., supra,* 463 *U.S.* at 169, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556, is satisfied only if "the factor or factors used in the apportionment formula [ ] actually reflect a reasonable sense of how income is generated." *Ibid.* External consistency looks "to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *Jefferson Lines, supra,* 514 *U.S.* at 185, 115 *S.Ct.* at 1338, 131 *L.Ed.*2d at 272. Stated simply, the question is whether the state's tax law reasonably reflects the activity within its jurisdiction. The external consistency test requires a "practical inquiry" into the inter-state activity taxed in relation to the activity in the taxing jurisdiction. *Goldberg v. Sweet,* 488 *U.S.* 252, 264–65, 109 *S.Ct.* 582, 590–91, 102 *L.Ed.*2d 607, 618–19 (1989).

The discrimination prong of the test addresses the basic dormant Commerce Clause proscription against states using taxes to promote in-state businesses at the expense of out-of-state businesses. "[T]he Commerce Clause prohibits a State from imposing a heavier tax burden on out-of-state businesses that compete in an interstate market than it imposes on its own residents who also engage in commerce among States." *Am. Trucking Ass'ns, Inc. v. Scheiner,* 483 *U.S.* 266, 282, 107 *S.Ct.* 2829, 2839, 97 *L.Ed.*2d 226, 242 (1987); *see also Fulton, supra,* 516 *U.S.* at 330, 116 *S.Ct.* at 853, 133 *L.Ed.*2d at 804 ("In its negative

aspect, the Commerce Clause 'prohibits economic protectionism.'" (citation omitted)); *Pennsylvania v. West Virginia*, 262 *U.S.* 553, 596, 43 *S.Ct.* 658, 665, 67 *L.Ed.* 1117, 1132 (1923) (The "power to lay and collect taxes . . . cannot be exerted in a way which involves a discrimination against [interstate] commerce.").

The discrimination analysis first distinguishes between facially discriminatory taxes and those that have discriminatory effects or purpose. Facially discriminatory state taxes explicitly put greater burdens on out-of-state businesses or provide more favorable terms to in-state businesses. For example, subsidies or tax breaks only available to in-state businesses facially discriminate and such "[s]tate laws discriminating against interstate commerce on their face are 'virtually *per se* invalid.'" *Fulton, supra*, 516 *U.S.* at 331, 116 *S.Ct.* at 854, 133 *L.Ed.*2d at 805 (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 *U.S.* 93, 99, 114 *S.Ct.* 1345, 1350, 128 *L.Ed.*2d 13, 21 (1994), and citing *City of Philadelphia v. New Jersey*, 437 *U.S.* 617, 624, 98 *S.Ct.* 2531, 2535, 57 *L.Ed.*2d 475, 481 (1978)).

The analysis is more nuanced when a tax does not facially discriminate against out-of-state interests but nonetheless disparately impacts interstate commerce. Even a neutral law can be discriminatory if it is made with a "discriminatory purpose or discriminatory effect." *Bacchus Imps., Ltd. v. Dias*, 468 *U.S.* 263, 270–71, 104 *S.Ct.* 3049, 3054–55, 82 *L.Ed.*2d 200, 208–09 (1984) (citations omitted) (finding neutral tax exemption for fruit wines discriminatory because motivated by intent to benefit local pineapple wine industry). Unlike fair apportionment analysis, which tolerates imperfect approximation short of "grossly distorted" results, there is no de minimus exception for discrimination and claims of discrimination need not be accompanied by specific factual proofs. *Id.* at 269, 104 *S.Ct.* at 3054, 82 *L.Ed.*2d at 208 ("It is well settled that '[w]e need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.'" (alteration in original) (citation omitted)). That said, when a "statute regulates evenhandedly to effectuate a legitimate local public

interest, and its effects on interstate commerce are only inciden-
tal," the balancing test in *Pike v. Bruce Church, Inc.* applies. 397
*U.S.* 137, 142, 90 *S.Ct.* 844, 847, 25 *L.Ed.*2d 174, 178 (1970).

Finally, the fourth prong, fair relation, examines
whether the taxpayer received benefits from the taxing state.
The fair relation prong "imposes the additional limitation that the
*measure* of the tax must be reasonably related to the extent of the
contact[.]" *Commonwealth Edison Co. v. Montana,* 453 *U.S.* 609,
626, 101 *S.Ct.* 2946, 2958, 69 *L.Ed.*2d 884, 900 (1981) (citations
omitted). Although this language may suggest a proportionality
requirement between the benefits provided and the tax paid, *see
id.* at 651–52, 101 *S.Ct.* at 2971, 69 *L.Ed.*2d at 916 (Blackmun, J.,
dissenting), that is not the case for general revenue taxes like net
income taxes. "The only benefit to which the taxpayer is constitu-
tionally entitled is that derived from his enjoyment of the privi-
leges of living in an organized society, established and safeguarded
by the devotion of taxes to public purposes." *Id.* at 623, 101 *S.Ct.*
at 2956, 69 *L.Ed.*2d at 897–98 (citation omitted); *D.H. Holmes,
supra,* 486 *U.S.* at 32, 108 *S.Ct.* at 1624, 100 *L.Ed.*2d at 28.

## IV.

### A.

In applying the four-pronged *Complete Auto* test to this matter,
certain parts of the test are of little consequence, and receive only
the following brief analysis.

This is a facial challenge to the Throw–Out Rule. The substan-
tial nexus prong is not pertinent because it goes to whether it is
fair for a state to tax a taxpayer. The state could not constitution-
ally tax a taxpayer who did not have sufficient contacts with the
state regardless of the Throw–Out Rule. The Throw–Out Rule
only affects the apportionment of the tax base and thus, the
substantial nexus prong is not implicated in a challenge to the
Throw–Out Rule. Further, income that is so separate from a
taxpayer's activity in New Jersey that New Jersey could not

constitutionally tax it would not be part of the taxpayer's unitary business and would not be in the tax base regardless of the Throw–Out Rule. *See, e.g., Allied–Signal, supra,* 504 *U.S.* 768, 112 *S.Ct.* 2251, 119 *L.Ed.*2d 533 (holding state could not tax sale of stock that was unrelated to unitary business). Thus we need not give the substantial nexus prong further attention.[9]

Similarly, the facial constitutionality of the Throw–Out Rule does not hinge on the fair relation prong. For a general revenue tax, the fair relation prong requires only that a taxpayer has been accorded the general benefits of civilized society. Any more extensive review under this prong is best left for consideration in an as-applied setting.

### B.

### 1.

The brunt of the challenge to the Throw–Out Rule is directed at the Rule's impact in respect of the fair apportionment prong's requirements. The argument is that by including certain out-of-state receipts in the tax base but not in the sales formula, New Jersey taxes more than its appropriate share. Whether the Throw–Out Rule results in a fair apportionment depends on what types of receipts are thrown out. The receipts that may be thrown out fall into two types: (1) receipts that are not taxed because the taxpayer does not have the requisite constitutional contacts with a state or because of congressional action setting some other, lower threshold of what Congress considers a business's activity in a state sufficient for a state to tax the business,

---

[9] Whirlpool's argument about extraterritorial taxation is, as such, misplaced. In assessing a particular fair apportionment method, a state need only show that it is connected to the unitary business to be able to consider all income for apportionment. To the extent that a state's portion is argued to be too large, it may be that the state taxes extraterritorially, but that is a fair apportionment argument, not a substantial nexus claim. Mere inclusion of extraterritorial income in the tax base for apportionment is not tantamount to extraterritorial taxation. *Shell Oil, supra,* 488 *U.S.* at 30–31, 109 *S.Ct.* at 284, 102 *L.Ed.*2d at 199.

such as *P.L.* 86–272;[10] and (2) receipts that are not taxed because a state chooses not to impose an income tax. The distinction is simple; in the first category the other state lacks jurisdiction to tax, and in the second the state chooses not to exercise its jurisdiction.

The Director contends that not all receipts are thrown out, but does not identify which are not. Whirlpool contends that all untaxed receipts are thrown out, regardless of the reason for the other state's action, which is problematic, even under a facial constitutional analysis, because although a lack of jurisdiction is rationally related to how much business a taxpayer does in a state, a state's legislative tax system is not. Whether another state chooses to tax a receipt has no bearing on how much income is attributable to New Jersey. A state's choice not to impose a tax is equivalent to taxing at a rate of 0%. New Jersey's share should not increase because another state sets its tax rate at 0% any more than if that state's rate was .01% or 10%. Such an increase would interfere with the taxing authority of the other state over the receipts generated in that state.[11]

The Throw–Out Rule's external consistency depends on the rationale for throwing out the receipts. Throwing out receipts because another state does not have an income tax will not result in an externally consistent outcome because a state's decision to have an income tax is independent of a taxpayer's business activity. By way of example, consider a company with a factory located in Pennsylvania making half of its sales in Pennsylvania

---

[10] The most important federal legislation limiting state taxation on interstate business is 15 *U.S.C.A.* §§ 381–84 (more commonly referred to in its uncodified form as *"P.L.* 86–272"). The law prohibits a state from imposing net income taxes on businesses whose only activity in the state is selling or soliciting orders for tangible personal property shipped from out of state to the taxing state.

[11] Regardless of which type of receipt is excluded from the denominator, the Throw–Out Rule is internally consistent. If all states threw out untaxed receipts, no more than 100% of a taxpayer's income would be taxed. The Throw–Out Rule operates to divide the untaxed receipts among the taxing states but does not result in double taxation.

and half in New Jersey. If Pennsylvania abolished its income tax, the apportionment formula using the Throw–Out Rule would go from 50/100=50% to New Jersey to 50/(100–50)=100% to New Jersey although the company's underlying business did not change. Assume further that the company was instead based in a non-taxing state such as Nevada and sold 90 widgets in Nevada and 10 in New Jersey. Without the Throw–Out Rule, the sales factor would be 10/100=10%. With the Throw–Out Rule, the sales factor would be 10/(100–90)=100% to New Jersey. That result is neither just nor fair, considering how much more Nevada must have contributed to the production of income than New Jersey.

On the other hand, the Throw–Out Rule is arguably externally consistent when the untaxed receipts are thrown out due to a state's lack of jurisdiction to tax. The Throw–Out Rule still operates to increase New Jersey's share, but in this situation New Jersey also may have contributed more to the production of a sale than the sales factor, without the Throw–Out Rule, would suggest. Again, assume that the Nevada company from the earlier example relocated to New Jersey while maintaining the same 90 sales to Nevada and 10 sales to New Jersey proportionality. The company's only dealings with Nevada would be shipping the product to Nevada, which is insufficient for taxation in Nevada under *P.L.* 86–272, even if Nevada had an income tax, because the factory and all operations are in New Jersey. Without the Throw–Out Rule the sales factor would be 10%, and with the Throw–Out Rule the sales factor would be 100% to New Jersey. In that circumstance, allocating 100% to New Jersey may be reasonable. Nevada contributed relatively little compared to New Jersey and application of the Throw–Out Rule may more closely reflect the economic reality of New Jersey's contributions to the Nevada sales. Although Nevada provided some benefits, such as a market, because those benefits were not enough to give Nevada jurisdiction to tax, they would be constitutionally insignificant in terms of apportionment. The minor distortion likely would fall within the zone of permissible inaccuracy when using an apportionment formula.

That is not to assert that this interpretation of the Throw–Out Rule would lead to a fair outcome in every case, but only that the systematic distortion would not render the rule facially unconstitutional. And, importantly, there would be further opportunity to eliminate unfairness to the corporation, such as if multiple states were using a Throw–Out Rule in identical fashion in respect of such results, through an as-applied challenge by the entity.[12]

In sum, the nature of activities in a state does relate to how much income is derived from that state. Some activities contribute more value to a transaction than others and the purpose of the sales factor is not simply to measure *where* sales take place, but to serve as a proxy for how much a state contributed to the income generated by the sales. Formula apportionment recognizes that multiple states may contribute to a transaction even if a taxpayer would attribute the transaction to only one state. On the other hand, it bears emphasizing there is no requirement that all sales be allocated by an apportionment formula. But, just because one state does not impose a tax on a sale does not mean that New Jersey or any other state can.

### 2.

The plain language of New Jersey's Throw–Out Rule does not distinguish between the categories of receipts herein identified.

---

[12] By way of example, assume a corporate taxpayer that has business activity in all fifty states; however, its activity in two states is insufficient to support, constitutionally, the imposition of any income tax by those taxing states and therefore none is imposed on the receipts generated in those states. Assume further that the remaining forty-eight states all have throw-out rules identical to New Jersey's. If all forty-eight states seek to apply their respective throw-out rules to the untaxed receipts from the two other aforementioned states, and thereby swell the taxpayer's tax liability in every state, there may well be unfairness from a reflexive application of the Rule. In such circumstances, the taxpayer should be permitted to seek relief from an unfair application of New Jersey's Throw–Out Rule through an as-applied challenge. Additionally, there may be untold other circumstances that pose fact-sensitive, unfair applications of the Throw–Out Rule. They also are best addressed through the vehicle of an as-applied challenge seeking relief from the unique unfairness that is posed to a particular taxpayer.

Whirlpool asserts that all receipts are thrown out. The Director has provided no illumination on this precise point. He asserts that not all receipts are thrown out, but never identifies such receipts.

Our duty when construing a statute subject to a constitutional challenge is clear. We must presume "that the [L]egislature acted with existing constitutional law in mind and intended the [statute] to function in a constitutional manner." *State v. Profaci*, 56 *N.J.* 346, 349, 266 *A.*2d 579 (1970) (citations omitted). Hence, when "a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation." *Id.* at 350, 266 *A.*2d 579 (citation omitted). *See also G.D. v. Kenny*, 205 *N.J.* 275, 300, 15 *A.*3d 300 (2011); *Gallenthin Realty Dev., Inc. v. Borough of Paulsboro*, 191 *N.J.* 344, 359–60, 924 *A.*2d 447 (2007); *Garfield Trust Co. v. Dir., Div. of Taxation*, 102 *N.J.* 420, 433, 508 *A.*2d 1104 (1986) (citation omitted). Similarly, when a statute's constitutionality is drawn into question or placed in serious doubt, this Court should ascertain whether a construction of the statute is possible that avoids the constitutional problem. *State v. Miller*, 170 *N.J.* 417, 433, 790 *A.*2d 144 (2002) (citing *Int'l Ass'n of Machinists v. Street*, 367 *U.S.* 740, 749, 81 *S.Ct.* 1784, 1790, 6 *L.Ed.*2d 1141, 1150 (1961); *Crowell v. Benson*, 285 *U.S.* 22, 62, 52 *S.Ct.* 285, 296, 76 *L.Ed.* 598, 619 (1932)).

That course of action is the more prudent one here. The Throw–Out Rule operates constitutionally when the category of receipts that may be thrown out is limited to receipts that are not taxed by another state because the taxpayer does not have the requisite constitutional contacts with the state or because of congressional action such as *P.L.* 86–272. Although the Throw–Out Rule clearly operates in a constitutional manner in that situation, it does not in the situation of receipts that are not taxed by another state because the state chooses not to impose an

income tax. Faced with a tax formula that predictably operates unconstitutionally in some circumstances, we will interpret the statute narrowly so that it generally operates constitutionally.

Moreover, our interpretation aligns the Throw–Out Rule with the original legislative expressions of intent about the statute's operation. In describing the specific need for the Throw–Out Rule, the Assembly Budget Committee and the Senate Budget and Appropriations Committee both stated:

> The more goods that are shipped out of New Jersey, the lower [the sales] factor is. *Some of those sales are made in states where the corporation is not subject to tax because the corporation has no operations in those states. These sales are typically referred to as "nowhere sales"* because they result in income being assigned so that it is taxed nowhere. *The bill closes this loophole by "throwing out" the "nowhere sales" from the denominator of the sales fraction, which causes more of the income of the corporation to be assigned to states where the corporation actually has operations.*
>
> [A. Budget Comm., Statement to A., No. 2501 (June 27, 2002) (emphasis added); *see* S. Budget & Appropriations Comm., Statement to S., No. 1556 (June 27, 2002).]

That history indicates that original views as to the Rule's reach meant for it to apply only to receipts assigned to states lacking jurisdiction over the taxpayer, not to situations where states have taxing jurisdiction over a corporation's operations but choose not to impose an income tax. Although the literal text of the Rule seemingly covers *any* situation where a corporation is not subject to income tax, in view of the shadow of unconstitutionality over such an interpretation, we adhere to our obligation to construe statutes in a way that avoids constitutional infirmity and do so here.

We hold that facial constitutionality is satisfied because we interpret the statute to be limited in operation to the setting described favorably above: to receipts that are not taxed because the other state lacks jurisdiction to tax. Thus, we construe the Throw–Out Rule narrowly and in line with its legislative history, and hold that it operates only to throw out sales made in states without taxing jurisdiction. *Cf. City of Chicago, supra,* 527 *U.S.* at 68, 119 *S.Ct.* at 1865, 144 *L.Ed.*2d at 87–88 (O'Connor, J., concurring) (noting that state supreme court could have applied limiting

construction); *State v. Natale*, 184 *N.J.* 458, 485–87, 878 *A.*2d 724 (2005) (applying "judicial surgery" to preserve constitutionality of statute).

## C.

Finally, with respect to the discrimination prong of *Complete Auto*, we first note that the Throw–Out Rule is not facially discriminatory. It does not differentiate between in-state and out-of-state businesses. Both are equally subject to the Throw–Out Rule. Thus, the Throw–Out Rule does not cause New Jersey to "tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Armco Inc. v. Hardesty*, 467 *U.S.* 638, 642, 104 *S.Ct.* 2620, 2622, 81 *L.Ed.*2d 540, 545 (1984).

The Throw–Out Rule in its broadest interpretation does, however, distinguish between non-taxing and taxing states. As a result of that, New Jersey would impose greater tax liability on a corporation that does business with a non-taxing state as opposed to a corporation that does business with a state that imposes taxes. It is far from clear how such a practice would fare based on a dormant Commerce Clause analysis; however, that need not be examined in light of our limiting interpretation of the Throw–Out Rule. When the Throw–Out Rule operates only to throw out receipts that are untaxed because of lack of jurisdiction, the effect is the same for all states. It does not matter in which non-New Jersey state a business generates an untaxed receipt. Thus, whether the Throw–Out Rule applies will depend on the manner the taxpayer conducts business, not the location. There are no Commerce Clause discrimination concerns when receipts are thrown out for lack of jurisdiction.

## V.

Our holding makes it unnecessary to wade extensively into the depths of the parties' strident disagreement over whether the standard of review set forth in *Salerno* should have been applied

in this matter. Recognizing, at least implicitly, that the law was less than clear, the Tax Court and Appellate Division nevertheless applied the current *Salerno* standard of review, which adds to Whirlpool's claims of error on appeal. *Pfizer, supra,* 24 *N.J.Tax* at 123–24.

In *Salerno, supra,* the United States Supreme Court confronted a facial challenge to the Bail Reform Act of 1984. 481 *U.S.* at 741, 107 *S.Ct.* at 2098, 95 *L.Ed.*2d at 705. The Supreme Court stated that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." 481 *U.S.* at 745, 107 *S.Ct.* at 2100, 95 *L.Ed.*2d at 707; *id.* at 741, 107 *S.Ct.* at 2098, 95 *L.Ed.*2d at 705 (upholding Bail Reform Act on basis that it may operate constitutionally). We articulated a similar standard in *Linden, supra,* albeit for interpreting challenges under the New Jersey Constitution, noting that statutes are presumed constitutional and that "[a] taxing statute is not facially unconstitutional if it operates constitutionally in some instances." 150 *N.J.* at 532, 696 *A.*2d 683 (citing *J.L. Muscarelle, Inc. v. Saddle Brook Twp.,* 14 *N.J.Tax* 453, 473 (1995) (Hamill, J.T.C., concurring)).

Although the *Salerno* standard has been widely applied, questions have arisen as to its continued validity. In *City of Chicago, supra,* the United States Supreme Court's majority opinion specifically stated, in a footnote, that "[t]o the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court, including *Salerno* itself. . . ." 527 *U.S.* at 55 n. 22, 119 *S.Ct.* at 1858, 144 *L.Ed.*2d at 79–80 (1999). Nevertheless, the Court avoided a direct confrontation with *Salerno,* noting that "[w]e need not, however, resolve the viability of *Salerno's* dictum because this case comes to us from a state—not a federal—court." [13] *Ibid.* The Supreme Court ultimately decided

---

[13] In dissent, Justice Scalia wrote in support of the continued viability of the *Salerno* standard, noting that "[u]nsurprisingly, given the clarity of our general

that the challenged anti-loitering statute directed at gang members was void for vagueness. *Id.* at 64, 119 *S.Ct.* at 1863, 144 *L.Ed.*2d at 85.

The footnote in *City of Chicago* to the contrary, *Salerno* still is used in facial challenges. Recently, in *United States v. Stevens,* the Supreme Court proffered *Salerno* as one of two possible standards for evaluating a facial challenge to the constitutionality of a statute:

> To succeed in a typical facial attack, [the challenger] would have to establish "that no set of circumstances exists under which [the statute] would be valid," *United States v. Salerno,* 481 *U.S.* 739, 745, 107 *S.Ct.* 2095, 95 *L.Ed.*2d 697 (1987), or that the statute lacks any "plainly legitimate sweep," *Washington v. Glucksberg,* 521 *U.S.* 702, 740, n. 7, 117 *S.Ct.* 2258, [ ] 138 *L.Ed.*2d 772 (1997) (Stevens, J., concurring in judgments) (internal quotation marks omitted). Which standard applies in a typical case is a matter of dispute that we need not and do not address[.]
>
> [*United States v. Stevens,* —— *U.S.* ——, ——, 130 *S.Ct.* 1577, 1587, 176 *L.Ed.*2d 435, 446 (2010).]

Despite acknowledging the viability of the *Salerno* standard, it bears remembering that *Stevens* was a First Amendment case. The Supreme Court noted that in the First Amendment context, " 'a second type of facial challenge [is available],' whereby a law may be invalidated as overbroad," *ibid.,* and ultimately used that alternative standard to decide the case. *Id.* at ——, 130 *S.Ct.* at 1592, 176 *L.Ed.*2d 452.

Although there exists a measure of uncertainty over the use of *Salerno* as the de facto standard for facial challenges to the constitutionality of a statute, we are not persuaded by Whirlpool's argument that we should abandon its use here. We see no ready or clear indication that the Supreme Court has signaled its abandonment generally, or specifically in tax statute challenges.

---

jurisprudence on this point, the Federal Courts of Appeals *all* apply the *Salerno* standard in adjudicating facial challenges." *City of Chicago, supra,* 527 *U.S.* at 80, 119 *S.Ct.* at 1870–71, 144 *L.Ed.*2d at 95 (Scalia, J., dissenting). His dissent unequivocally adhered to *Salerno,* maintaining that a party can defeat a "facial challenge by conjuring up *a single valid application* of the law." *Id.* at 81, 119 *S.Ct.* at 1871, 144 *L.Ed.*2d at 96 (Scalia, J., dissenting).

We are particularly skeptical of that likelihood in tax cases, where statutory taxing policies are crafted with an eye for application to businesses with "enormous variation" in organization, *see Whirlpool, supra,* 25 *N.J.Tax* at 532, and where there is a need to allow room for tax statutes to accommodate such variation. Accordingly, we decline to anticipate that the United States Supreme Court would require a mandatory and less generous standard to be applicable in this facial challenge to a tax statute.

That said, the more limited and, we believe, properly intended interpretation that we give to the Throw–Out Rule will permit its operation in a facially constitutional manner with respect to the fair apportionment requirement.

## VI.

In sum, in applying the multi-part test of *Complete Auto* in this facial challenge to the Throw–Out Rule, we conclude, based on the limiting interpretation that we give the Throw–Out Rule, that the statutory Rule suffers no facial constitutional infirmity. We hold that, for corporate taxpayers having a substantial nexus to New Jersey, the Rule may apply constitutionally only to untaxed receipts from those states that lack jurisdiction to tax the corporation either due to insufficient connection with the corporation or due similarly to congressional action such as *P.L.* 86–272. That interpretation places the Rule's application in line with the intent of the Legislature in enacting the Rule. Moreover, our holding should eliminate or shorten remaining proceedings in the as-applied challenges that will follow.

## VII.

As modified by this opinion, the judgment of the Appellate Division is affirmed.

*For affirmance as Modified*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.