DeALMEIDA, P.J.T.C.
This opinion is issued pursuant to R. 2:5-l(b) to amplify the court’s August 9, 2013 bench opinion granting partial summary judgment in favor of Lorillard Licensing Co., LLC in the above-referenced matter. The effect of the court’s decision was memorialized in a Final Order and Final Judgment dated November 15, 2013. The Director, Division of Taxation filed a Notice of Appeal with the Superior Court, Appellate Division, on December 30, 2013.
I. Findings of Fact and Procedural History
This letter opinion sets forth the court’s findings of fact and conclusions of law based on the parties’ submissions with respect to the taxpayer’s motion for summary judgment. R. 1:7-4.
Plaintiff Lorillard Licensing Co., LLC (“Licensing”) is a North Carolina limited liability company. Licensing has no physical presence in New Jersey. It has no employees, tangible personal property, or real property in this State.
Licensing owns various trademarks and trade names associated with tobacco products. The company licenses its trademarks and *592 trade names to Lorillard Tobacco Company (“Tobacco”), which wholly owns Licensing. Tobacco manufactures, markets, distributes and sells cigarettes at wholesale in all 50 states, including New Jersey, as well as the District of Columbia and other United States possessions, under Licensing’s trademarks and trade names. Under the licensing agreement, Tobacco pays a royalty to Licensing for the use of its trademarks and trade names. The royalty payments are based on the tobacco sales in each State, including sales in New Jersey.
Tobacco had New Jersey sales during the period 1999 to 2004 and paid royalties to Licensing based on those sales. Because Licensing has no physical presence in New Jersey, it did not file CBT returns for the tax years ending 1999 through 2004.
On September 11, 2006, the Division of Taxation issued to Licensing a Notice of Assessment Related to Final Audit Determination. The Division determined that Licensing was subject to CBT for the tax years ending 1999 through 2004, despite its lack of physical presence in the State. The Division’s rationale for its assessment was that Licensing is subject to CBT for those periods because it licensed its trademarks and trade names to Tobacco, which sold products under Licensing’s trademarks and trade names in New Jersey, generating royalty payments for Licensing. The September 11, 2006 Notice of Assessment estimated Licensing’s CBT liability for the tax years ending 1999 through 2004 to be $24,251,739, including penalties and interest.
At the time that the Division issued the September 11, 2006 Notice of Assessment, the prevailing law in New Jersey with respect to the applicability of the CBT to a trademark holding company with no physical presence in the State was set forth in Lanco, Inc. v. Director, Div. of Taxation, 379 N.J.Super. 562, 879 A.2d 1234 (App.Div.2005), which was then on appeal to the New Jersey Supreme Court. The issue decided in that opinion was described by the court as follows:
[Wjhether New Jersey may constitutionally subject a foreign corporation to the Corporation Business Tax (N.J.S.A. 54:10A-1, et seq., “the CBT”), where the corporation has no physical presence in the state and derives income from a New *593 Jersey source only pursuant to a license agreement with another corporation that conducts a retail business here.
[Id. at 563, 879 A.2d 1234 (internal quotations omitted).]
In that case, the taxpayer, Laneo, Inc., had no physical presence— employees, tangible property, real property, financial accounts — in New Jersey. The company, however, licensed its trademarks and trade names to another entity that used the trademarks and trade names to sell clothing in New Jersey, generating royalty payments for the trademark holding company. Ibid. The Director’s position in Laneo was succinctly set forth in the Appellate Division opinion:
On this appeal the Director argues that Laneo derived receipts from sources in the State, thereby making it subject to the tax, and that “there are no constitutional impediments to application of the corporation business tax to plaintiff given its substantial nexus to New Jersey” because there was no violation of the due process clause (which is not contested before us) or the Commerce Clause (which is the critical issue contested on the appeal). Thus, the critical issue is whether the taxpayer must have a physical presence in the state in order to constitute the required “substantial nexus” necessary to satisfy the Commerce Clause under Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), which applied that test and held physical presence was necessary in the context of a sales and use tax.
[Id. at 563-64, 879 A.2d 1234.]
The holding of the Appellate Division was also clear:
We agree with the Director that Quill does not apply to taxes other than sales and use taxes, Quill, supra, 504 U.S. at 314, 112 S.Ct. at 1914, 119 L.Ed.2d at 108 (stating “[w]e have not, in our review of other types of taxes, articulated the same physical-presence requirement that Bellas Hess established for sales and use taxes----"), and that the Corporation Business Tax may be constitutionally applied to impose a tax on plaintiffs income from licensing fees attributable to New Jersey.
[Id. at 567, 879 A.2d 1234.]
On October 12, 2006, about a month after issuance of the Notice of Assessment against Licensing, the New Jersey Supreme Court issued its opinion in Lanco, Inc. v. Director, Div. of Taxation, 188 N.J. 380, 908 A.2d 176 (2006). Again, the issue was concisely described by the Court:
This appeal involves the issue of whether New Jersey may constitutionally subject a foreign corporation to the Corporation Business Tax, N.J.S.A. 54:10A-1 to -41, when the corporation lacks physical presence in New Jersey but derives income through a licensing agreement with a company conducting retail operations in New Jersey.
[Id. at 382, 908 A.2d 176.]
*594 The Court’s per curiam opinion affirmed the Appellate Division holding and adopted the appellate court’s reasoning:
The Appellate Division answered that question affirmatively. We agree and affirm substantially for the reasons expressed in Judge Stern’s thorough and thoughtful opinion.
[Ibid. (citation omitted).]
On November 21, 2006, approximately a month after the Supreme Court’s decision in Lanco, Licensing filed a Complaint in this court challenging the Notice of Assessment. The Complaint sets forth numerous claims for relief as grounds for invalidating the Notice of Assessment, including that Licensing lacks the substantial nexus with the State to permit it to be subject to CBT without offending the United States Constitution.
On March 9, 2007, while this matter was pending, counsel for Lanco Inc., who represented Licensing in this matter, filed a petition for certiorari with the United States Supreme Court seeking review of the New Jersey Supreme Court decision in Lanco.
On June 18, 2007, the United States Supreme Court denied Lanco Inc.’s petition for certiorari. 551 U.S. 1131, 127 S.Ct. 2974, 168 L.Ed.2d 702 (2007).
In 2009, the Division of Taxation was authorized by the Legislature to implement an amnesty program for certain outstanding tax liabilities. In light of the denial of certiorari in the Lanco matter, Licensing elected to file pursuant to the amnesty program CBT returns for the tax periods covered by the Notice of Assessment. Licensing effectively conceded the Director’s position with respect to nexus, accepting for purposes of the amnesty program that Licensing is subject to CBT, and paid $5,859,359 to the Director. This tax liability was calculated on Licensing’s returns pursuant to its interpretation of N.J.S.A. 54:10A-6(B)(6), as amended by L. 2002, c. 40, § 8, the so-called “Throw-out Rule.” The Throw-Out Rule concerns the calculation of a foreign taxpayer’s income allocable to New Jersey for CBT purposes. It is called the Throw-Out Rule because it requires that certain receipts realized by the taxpayer in other States be removed or “thrown-out” of the denominator of the receipts fraction of the then-applicable, four- *595 fraction formula for determining New Jersey’s taxable share of a foreign taxpayer’s income.
Licensing’s filing of returns was also pursuant to a Stipulation of Partial Settlement and Partial Dismissal. Licensing agreed to the dismissal of its First and Second Claims for Relief. Those counts alleged that Licensing did not have the requisite nexus to New Jersey to allow for the imposition of CBT on Licensing’s income. Pursuant to the Stipulation, after Licensing’s amnesty payment
the only issues remaining in dispute in this case are: (1) Plaintiffs challenge to Defendant’s assessment arising from the application of the “Throw-Out Rule” found at N.J.S.A. 54:10A-6(B); (2) Defendant’s imposition of penalties on Defendant’s assessment arising from the application of the Throw-Out Rule, including but not limited to Tax Amnesty penalty; and (3) Defendant’s imposition of interest on Defendant’s assessment based on the Throw-Out Rule and penalties thereon (ie., the eleven claims that survive this Stipulation of Partial Settlement and remain to be litigated are the Third Claim for Relief through the Thirteenth Claim for Relief).
On July 30, 2010, the Tax Court Clerk/Administrator entered a Partial Judgment dismissing the first and second claims for relief in the Complaint pursuant to the Stipulation.[2]
On July 16,2012, Licensing moved for summary judgment on its remaining claims. The taxpayer asked the court to determine the standard that should be applied by the Director under the ThrowOut Rule when determining Licensing’s allocable share of income subject to taxation by New Jersey for tax years 2002 through 2004 (because the Throw-Out Rule was enacted effective for tax year 2002 forward, Licensing’s motion did not concern earlier tax years, which were effectively resolved through the 2009 amnesty payment). Licensing based its motion, in part, on the “limiting interpretation” given to the Throw-Out Rule by the New Jersey Supreme Court in Whirlpool Properties, Inc. v. Director, Div. of Taxation, 208 N.J. 141, 177, 26 A.3d 446 (2011). The meaning of *596 the limiting interpretation and its application to Licensing’s receipts will be discussed more fully below.
On May 21, 2013, the Director opposed Licensing’s summary judgment motion on procedural and substantive grounds.
On August 2, 2013, Licensing filed a reply brief in further support of its motion.
On August 9, 2013, the court heard oral argument from counsel. At the close of argument, the court expressed its findings of fact and conclusions of law from the bench. The court determined that the record contained sufficient non-disputed material facts on which to make a legal determination of the standard that the Director must apply under the Throw-Out Rule when calculating Licensing’s share of income allocable to New Jersey for CBT purposes. The court ordered the Director to review the tax returns filed by Licensing, for tax years 2002 through 2004 and to calculate Licensing’s tax liability in accordance with the court’s decision regarding the standard to be applied under the ThrowOut Rule.
On August 9, 2013, the court entered an Order granting Licensing’s summary judgment motion to the extent explained in the bench opinion.
The Director thereafter reviewed the tax returns filed by Licensing and determined that, after applying the court’s August 9, 2013 decision, no CBT, penalties or interest are outstanding for Licensing for tax years 2002 through 2004. As a result of this determination, the remaining claims for relief in the Complaint no longer present a live case or controversy and are thus mooted but not abandoned or waived. The Director also reviewed Licensing’s CBT returns for all other issues and elected to make no further adjustments to Licensing’s CBT obligations.
On November 15, 2013, this court entered a Final Order and Final Judgment granting Licensing’s motion for summary judgment, ordering that no CBT, penalties or interest are due by Licensing for tax years 2002 through 2004, above the amounts it paid with its tax returns filed in the 2009 amnesty program, and *597 reversing and vacating the Notice of Assessment to the extent that it assesses any amounts except those amounts paid by Licensing with its 2009 returns.
On December 30, 2013, the Director filed a Notice of Appeal with the Superior Court, Appellate Division. This opinion amplifies the court’s August 9,2013 oral opinion. R. 2:5-l(b).
II. Conclusions of Law
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2. In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
The court finds that there are sufficient undisputed material facts in the motion record to make a legal determination of the standard that should be applied by the Director when calculating Licensing’s allocable share of income subject to CBT by New Jersey for tax years 2002 through 2004. Those undisputed facts are: (1) Licensing is a foreign entity with no physical presence, employees, real or tangible property in New Jersey; (2) Licensing owns trademarks and trade names associated with tobacco products; (3) during the tax years 2002 through 2004 Licensing authorized Tobacco to use Licensing’s trademarks and trade names in the sale of tobacco products in New Jersey and 49 other States, the District of Columbia and certain United States possessions (the “other States”); (4) pursuant to the agreement, Licensing received royalty payments from Tobacco based on the amount of Tobacco’s sales of products using Licensing’s trademarks and trade names in New Jersey and the other States; and (5) the *598 Director takes the position that under the United States Constitution Licensing has sufficient nexus with New Jersey to be subject to taxation by virtue of Licensing’s receipt of revenue from Tobacco as the result of Tobacco’s contractually authorized use of Licensing’s intangible assets for' the sale of tobacco products in New Jersey.
The CBT Act requires every corporation which does business or employs property in New Jersey to pay an annual tax. N.J.S.A. 54:10A-2 defines which business entities are subject to the tax. The statute provides:
Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax for each year, as hereinafter provided ... for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, [or] employing or owning capital or property ... in this State.
[N.J.S.A. 54:10A-2.]
“Doing business” under the CBT Act is intended to be interpreted expansively. As the Supreme Court explained over forty years ago, the “basis of the tax is a broad one and ... [i]t was certainly intended to reach foreign corporations ... as far as could constitutionally be done, and its disjunctive recital of the various privileges must be considered with the intended overall coverage in mind.” Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483, 236 A.2d 577 (1967), app. dis., 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968); see also N.J.A.C. 18:7-1.6(b)(“A taxpayer’s exercise of its franchise in this State is subject to taxation in this State if the taxpayer’s business activity in this State is sufficient to give this State jurisdiction to impose the tax under the Constitution and statutes of the United States.”).
Licensing originally took the position that it is not subject to CBT, either because it lacks sufficient contact with the State, in light of its lack of physical presence, to fall within the statutory ambit of the CBT Act, or, that it lacks sufficient nexus with New Jersey under the United States Constitution to be subject to taxation by the State. After the United States Supreme Court denied certiorari in Lanco, supra, Licensing took advantage of a 2009 tax amnesty program and conceded for the purposes of the *599 amnesty program that is was subject to taxation by New Jersey for the period 1999 through 2004. Licensing reserved, however, its right to contest the correct way to calculate the portion of Licensing’s income allocable to New Jersey for CBT purposes.
Pursuant to N.J.S.A. 54:10A-6, a foreign entity, such as Licensing, that maintains a regular place of business outside of the State “is obligated to pay tax only on that portion of its entire net income which is allocable to this State.” Stryker Corp. v. Director, Div. of Taxation, 18 N.J.Tax 270, 272-73 (Tax 1999), aff'd, 333 N.J.Super. 413, 755 A.2d 1200 (App.Div.2000), aff'd, 168 N.J. 138, 773 A.2d 674 (2001); see also Telebright Corp., Inc. v. Director, Div. of Taxation, 25 N.J.Tax 333 (Tax 2010), aff'd, 424 N.J.Super. 384, 38 A.3d 604 (App.Div.2012). The amount of an entity’s income subject to the CBT Act is determined by multiplying the entity’s entire net income by an allocation factor. N.J.S.A. 54:10A-4(b). The purpose of the allocation factor is to limit application of the CBT Act to only that income that has a sufficient nexus to New Jersey to satisfy constitutional constraints on State taxation. Central National-Gottesman, Inc. v. Director, Div. of Taxation, 14 N.J.Tax 545, 552 (Tax 1995), aff'd, 291 N.J.Super. 277, 677 A.2d 265 (App.Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996). Use of formula apportionment to derive taxable income has long been established. See Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 165, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545, 553 (1983).
During the tax years relevant to this appeal, the allocation factor was equal to the average of four fractions: a property fraction, a payroll fraction, and a receipts fraction (which is considered twice). The fractions had as their numerators, the property, payroll and sales receipts of the taxpayer fairly attributable to New Jersey, and as their denominators the total property, payroll and sales receipts of the taxpayer. Stryker, supra, 18 N.J.Tax at 276-77. According to N.J.S.A. 54:10A-6, as it read at the time applicable to this appeal, a foreign corporation’s taxable net worth and taxable net income is “determined by multiplying such entire net worth and entire net income, respectively, by an allocation factor which is the property fraction, plus twice the sales *600 fraction plus the payroll fraction and the denominator of which is four[.]” The property fraction is determined by dividing the average value of the taxpayer’s property in New Jersey by the average value of the taxpayer’s property everywhere. N.J.S.A. 54:10A-6(A). The payroll fraction is determined by dividing the taxpayer’s New Jersey payroll by total payroll. N.J.S.A. 54:10A-6(C).[3]
Without the Throw-Out Rule, the sales fraction is calculated as follows: receipts from sales, services, rents, royalties, and other business receipts in New Jersey are “divided by the total amount of the taxpayer’s receipts, similarly computed, arising during such period from all sales of its tangible personal property, services, rentals, royalties and all other business receipts, whether within or without the State.” N.J.S.A. 54:10A-6(B).
The Business Tax Reform Act of 2002 amended the receipts fraction of the CBT by including the Throw-Out Rule. The following was added to the final paragraph of N.J.S.A. 54:10A-6(B):
provided however, that if receipts would be assigned to a state, a possession or territory of the United States or the District of Columbia or to any foreign country in which the taxpayer is not subject to a tax on or measured by profits or income, or business presence or business activity, then the receipts shall be excluded from the denominator of the sales fraction.
[L. 2002, c. 40, § 8.] [4]
As the Supreme Court explained in Whirlpool, supra,
With the enactment of the Throw-Out Rule, the sales fraction was transformed; formerly a ratio of New Jersey receipts to total receipts, it became a ratio of New Jersey receipts to taxed receipts. When a receipt is thrown-out, the sales fraction always increases, causing the apportionment formula and the resultant CBT liability to increase.
[208 N.J. at 155, 26 A.3d 446],
*601 In Whirlpool, the taxpayer had no physical presence in New Jersey and conducted all of its business activities outside of the State. The company owned and managed brand names that it licensed to its parent, a New Jersey taxpayer, as well as other affiliates and third parties. The taxpayer earned income based on the number of goods bearing its brand that were produced by licensee plants, none of which were located in New Jersey. Ibid. The taxpayer did not file CBT returns in New Jersey for tax years 1996 through 2003 because it did not have a physical presence in this State. The Director issued an assessment against the taxpayer after calculating its allocable income based on information gleaned from the taxpayer’s related entities. Id. at 156, 26 A.3d 446. Using the Throw-Out Rule, the Director allocated to New Jersey 29.2572 percent of the taxpayer’s 2002 income and 41.8647 percent of the taxpayer’s 2003 income. By comparison, before the Throw-Out Rule came into effect, the portion of the taxpayer’s income allocated to New Jersey ranged between .9546 percent and 1.3337 percent from the period 1996 through 2001. Ibid. The taxpayer challenged its assessment in this court and its facial challenge to the constitutionality of the Throw-Out Rule ultimately arrived at the Supreme Court.
In its analysis of the facial constitutionality of the Rule, the Court explained that
The receipts that may be thrown out fall into two types: (1) receipts that are not taxed because the taxpayer does not have the requisite constitutional contacts with a state or because of congressional action setting some other, lower threshold of what Congress considers a business’s activity in a state sufficient for a state to tax the business, such as P.L. 86-272; and (2) receipts that are not taxed because a state chooses not to impose an income tax. The distinction is simple; in the first category the other state lacks jurisdiction to tax, and in the second the state chooses not to exercise its jurisdiction.
[Id. at 168-69, 26 A.3d 446 (footnote omitted).]
When examining the external consistency prong of the Commerce Clause analysis, see Container Corp., supra, 463 U.S. at 169, 103 S.Ct. at 2942, 77 L.Ed.2d at 556, the Court held that
[t]he Throw-Out Rule’s external consistency depends on the rationale for throwing out the receipts. Throwing out receipts because another state does not have an income tax will not result in an externally consistent outcome because a state’s decision to have an income tax is independent of a taxpayer’s business activity. *602 On the other hand, the Throw-Out Rule is arguably externally consistent when the untaxed receipts are thrown out due to a state’s lack of jurisdiction to tax. The Throw-Out Rule still operates to increase New Jersey’s share, but in this situation New Jersey also may have contributed more to the production of a sale than the sales factor, without the Throw-Out Rule, would suggest.
[Id. at 169, 170, 26 A.3d 446.]
The Court recognized, however, that the Throw-Out Rule as it was drafted by the Legislature does not distinguish between these categories of receipts. To solve this dilemma, the Court turned to a long-recognized principle: “when ‘a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation.’ ” Id. at 172, 26 A.3d 446 (quoting State v. Profaci, 56 N.J. 346, 350, 266 A.2d 579 (1970) (citation omitted)). The Court continued, “[s]imilarly, when a statute’s constitutionality is drawn into question or placed in serious doubt, this Court should ascertain whether a construction of the statute is possible that avoids the constitutional problem.” Id. at 172, 26 A.3d 446 (citing State v. Miller, 170 N.J. 417, 433, 790 A.2d 144 (2002)). To save the statute the court interpreted the Throw-Out Rule as follows:
The Throw-Out Rule operates constitutionally when the category of receipts that may be thrown out is limited to receipts that are not taxed by another state because the taxpayer does not have the requisite constitutional contacts with the state or because of congressional action such as P.L. 86-272. Although the ThrowOut Rule clearly operates in a constitutional manner in that situation, it does not in the situation of receipts that are not taxed by another state because the state chooses not to impose an income tax. Faced with a tax formula that predictably operates unconstitutionally in some circumstances, we will interpret the statute narrowly so that it generally operates constitutionally.
[Id. at 172-73, 26 A.3d 446.] [5]
The Court’s holding was unequivocal: “We hold that facial constitutionality is satisfied because we interpret the statute to be *603 limited in operation to the setting described favorably above: to receipts that are not taxed because the other state lacks jurisdiction to tax.” Id. at 173.
In light of the clear holding in Whirlpool, Licensing moved for summary judgment with respect to the standard the Director must use when applying the Throw-Out Rule to calculate the amount of Licensing’s receipts subject to taxation by New Jersey. Licensing’s argument arises from the intersection of the Supreme Court’s holdings in Lanco and Whirlpool. Licensing argues that Whirlpool plainly holds that the Director may “throw out” of the denominator of the receipts fraction only that income which is realized by Licensing from States which lack jurisdiction to tax the taxpayer. In addition, Licensing contends that Lanco establishes the principle that a trademark holding company with no physical presence in a State is subject to tax in that State by virtue of its receipt pursuant to a licensing agreement of royalty payments based on the sale of merchandise in the State. Thus, Licensing argues, it is, pursuant to the argument advanced by the Director and adopted by the Court in Lanco, subject to tax in every jurisdiction in which its trademarks and trade names are used by Tobacco to sell products. This is so, Licensing contends, because, as was the case with the taxpayer in Lanco, Licensing has no physical presence in any State except its State of incorporation, but earns royalty income from the use of its trademarks and trade names in every other State, the District of Columbia, and certain United States possessions pursuant to a licensing agreement. According to Licensing, because it is subject to tax in every State, the District of Columbia, and certain United States possessions by virtue of Tobacco’s sale of products using Licensing’s trademarks and trade names in those jurisdictions, no receipts may be thrown out of the denominator of its receipts fraction when allocating Licensing’s income to New Jersey for CBT purposes.
Licensing’s argument also is based on equitable considerations. The taxpayer argues that the Director should be judicially es-topped from taking a position contrary to the successful arguments he advanced in Lanco. See State v. Gonzalez, 142 N.J. 618, *604 632, 667 A.2d 684 (1995)(“This doctrine bars a party to a legal proceeding from arguing a position inconsistent with one previously asserted”)(quotations omitted). According to Licensing, the Director took a position in a legal proceeding regarding a State’s ability under the United States Constitution to tax a trademark holding company’s receipts of royalty payments from a licensing agreement. He was successful in asserting that a State may, consistent with the United States Constitution, tax such a company, even in the absence of physical presence, because the use of the company’s intangible assets in the State by a licensee to generate sales is sufficient nexus for taxation.
The Director argues, in effect, that the holding in Lanco concerning subjectivity to CBT cannot be grafted onto the holding in Whirlpool concerning the facial constitutionality of the Throw-Out Rule. According to the Director, being “subject to tax” under Lanco differs from being “subject to tax” under Whirlpool. This argument is unconvincing. In Lanco, the Court held that a State has the authority to tax a trademark holding company with no physical presence in the State based on the company’s receipt of royalty payments from sales in the State by a trademark licensee. The Court held that this activity is sufficient nexus to permit taxation under the United States Constitution. It is precisely this inquiry — whether a taxpayer has “the requisite constitutional contacts with a state” — that is the lynchpin of the Court’s analysis in Whirlpool. 208 N.J. at 168, 26 A.3d 446. Where a taxpayer has “the requisite constitutional contacts with a State” to authorize taxation under the United States Constitution, receipts from that State cannot be removed from the denominator of the receipts fraction under the Throw-Out Rule. Ibid.
The meaning of the Whirlpool holding is clear. In order to save the Throw-Out Rule from being struck down as facially unconstitutional, the Court limited its application. Where a taxpayer has contacts with a State or United States possession that are sufficient under the United States Constitution to authorize the State or possession to tax the receipts of that taxpayer, those receipts cannot be “thrown out” of the denominator of the CBT receipts fraction under N.J.S.A. 54:10A-6(B)(6), as amended by L. *605 2002, c. 40, § 8. This is not, as the Director argues, an imposition of New Jersey law or tax policy on the other States. The relevant inquiry under Whirlpool is not whether a taxpayer would be subject to taxation in other States under the CBT or the New Jersey Constitution if those laws were applicable outside New Jersey. It is, instead, whether the other States have authority under the United States Constitution to tax the taxpayer because the taxpayer has contacts with the other States that are sufficient to constitute nexus under the Due Process and Commerce Clauses. There is only one Due Process Clause and only one Commerce Clause and those provisions mean the same thing in every jurisdiction to which they apply — whether we consider if a taxpayer has sufficient constitutional nexus to be taxed in New Jersey or whether we consider if a taxpayer has sufficient constitutional nexus to be taxed in any other State or jurisdiction in which our Constitution is in place.
The Director initiated this matter by issuing a Notice of Assessment against Licensing because, in the Director’s view, a sufficient Constitutional nexus exists to tax Licensing by virtue of its receipt of royalties from a licensee using its trademarks and trade names to sell products in this State. The Director ultimately was successful in asserting this position. After the denial of certiorari in Lanco, Licensing conceded defeat on this issue and filed CBT returns.
The Director tests the limits of his credibility by asserting that the same licensing agreement that makes Licensing subject to tax in New Jersey does not also make Licensing subject .to tax elsewhere. Licensing receives royalty payments from Tobacco for sales in all 50 States and certain United States possessions under one licensing agreement, the very same agreement on which the Director successfully asserted his taxing authority over plaintiff. We know from the holding in Lanco that this type of arrangement is sufficient to allow the exercise of taxing authority under the United States Constitution. Under the prevailing law in New Jersey, as announced by our Supreme Court, Licensing is, therefore, subject to tax in all 50 States and the possessions covered by the agreement. Whether those States and possessions choose to *606 exercise that authority is immaterial to the application of the Throw-Out Rule.
Thus, the Director’s argument that summary judgment is not warranted because further investigation is necessary to determine if Licensing actually filed returns and/or paid tax in the other States is unpersuasive. Whether or not the other States actually collected a tax from Licensing does not control the inquiry. It is the ability to tax, not actual taxation, which determines if the Throw-Out Rule applies under Whirlpool. It matters not, as the Director claims, whether Licensing may have failed to file a return in a State where one was due or whether a State may have failed to audit a Licensing return that underreported its liability. As the Supreme Court pointed out in Whirlpool, New Jersey has no legitimate interest in considering the tax policy and practices of other States when determining whether to apply the Throw-Out Rule. New Jersey’s only arguable interest in this area is in altering the denominator of the receipts fraction to account for a taxpayer’s receipts in States that lack a sufficient nexus with the taxpayer to impose a tax (or are limited from doing so by Congressional action).
As a general rule, “[ejourts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997)(citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993)(“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”). However, “ ‘the courts remain the “final authorities” on issues of statute *607 ry construction and are not obliged to “stamp” their approval of the administrative interpretation.’ ” Koch v. Director, Div. of Taxation, 157 N.J. 1, 8, 722 A.2d 918 (1999)(quoting New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978)).
For the reasons stated above, the court concludes that the Director’s interpretation of the holding in Whirlpool is erroneous and his interpretation of the meaning of N.J.S.A. 54:10A-6(B)(6), as amended by L. 2002, c. 40, § 8, is unreasonable.[6]

 The original July 30, 2010 Judgment dismissed the entire Complaint. On August 13, 2010, the Tax Court Clerk/Administrator corrected the Judgment, revising it to become a Partial Judgment dismissing only the first two claims for relief.

 The CBT apportionment formula changed as the result of legislative action in 2011. The formula will become single sales fraction formula following a three-year phase-in starting in January 2012. L. 2011, c. 59, § 1.

 The Throw-Out Rule was repealed by legislative action in 2008. L. 2008, c. 120, § 2. This statutory change has no effect on Licensing’s CBT obligations for tax years 2002 through 2004.

P.L. 86-272, codified at 15 U.S.C. §§ 381-84, represents an exercise of Congressional authority to regulate state taxation of interstate commercial transactions. The statute prohibits a state from imposing net income taxes on businesses whose only activity in the state is selling or soliciting orders for tangible property shipped from out of state to the taxing state.

 In its August 9, 2013 bench opinion, the court rejected the Director's argument that the motion record was insufficient to establish several material facts. The court does not amplify that aspect of its decision. In addition, the court rejected the Director’s contention that the licensing agreement was not in the record. The agreement was, in fact, produced by the taxpayer. The Director's argument that the taxpayer did not file final CBT returns was resolved at oral argument when the taxpayer's counsel represented that the returns filed during the 2009 amnesty were the taxpayer's final returns. After its decision, the court allowed the Director to review the returns and calculate Licensing's CBT liability in light of the court's holding. After applying the court's decision and reviewing the returns the Director made no further adjustments to Licensing's CBT obligations. Given its legal determination regarding the application of the Throw-Out Rule, the court need not address Licensing's judicial estoppel arguments.