**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3444-18
A-0002-19

LORILLARD TOBACCO
COMPANY,

     Plaintiff-Respondent/
     Cross-Appellant,

v.

DIRECTOR, DIVISION OF
TAXATION,

     Defendant-Appellant/
     Cross-Respondent.

_____

Argued December 14, 2020 – Decided September 21, 2021

Before Judges Messano, Hoffman and Suter.

On appeal from the Tax Court of New Jersey, Docket Nos. 008305-2007 and 014043-2012, whose opinion is reported at 31 N.J. Tax 153 (Tax 2019).

Jamie M. Zug, Deputy Attorney General, argued the cause for appellant/cross-respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jamie M. Zug

and Joseph A. Palumbo, Deputy Attorney General, on the briefs).

Mitchell A. Newmark argued the cause for respondent/cross-appellant (Blank Rome, LLP, attorneys; Mitchell A. Newmark and Craig B. Fields (Blank Rome, LLP) of the New York bar, admitted pro hac vice, of counsel and on the briefs).

The opinion of the court was delivered by

SUTER, J.A.D.

In A-3444-18, the Director of the Division of Taxation (defendant) appeals the February 28, 2019 order granting summary judgment to plaintiff Lorillard Tobacco Company (Lorillard). The order required the Division of Taxation (Taxation) to pay the remainder of Lorillard's refund claims for tax years 2002 through 2005 with statutory interest. Lorillard cross-appeals the same order to the extent it did not address the constitutional issues it raised. In A-0002-19, defendant appeals the July 19, 2019 order granting judgment to Lorillard. A-0002-19 is consolidated with A-3444-18 because it raises the same issues, although for tax years 2007 through 2010.[1] Lorillard also cross-appealed this order.

---

[1] The appeals were consolidated on November 15, 2019.

For reasons that follow, we reverse the Tax Court orders because defendant's application of N.J.A.C. 18:7-5.18(b)(3) and accompanying schedule was an appropriate exercise of discretion, entitled to deference by the Tax Court, and was consistent with implementing legislation. We remand the case to the Tax Court for consideration of the constitutional issues Lorillard has raised.

I.

A.

Lorillard is a Delaware corporation with its headquarters in North Carolina. Lorillard Tobacco Co. v. Dir., Div. of Tax'n, 31 N.J. Tax 153, 158 (Tax 2019). It "manufactures, markets, distributes, and sells cigarettes" in New Jersey and other states. Ibid. Lorillard owns Lorillard Licensing Company, LLC, (Subsidiary), which is a North Carolina company with offices in that state.

In 1999, Lorillard assigned its intellectual property to Subsidiary. Ibid. Subsidiary licenses the use of this intellectual property to Lorillard. These licenses — which are "perpetual in term" — include the use of trademarks. Ibid. Lorillard pays Subsidiary royalties to use this intellectual property. Ibid.

Subsidiary alleged that it did not have offices, employees or property in New Jersey. It did not file corporation business tax (CBT) returns in New Jersey, claiming it had no "nexus" to the State. In 2006, Taxation audited

3

Subsidiary, claiming the company did have a nexus to New Jersey and that Subsidiary owed CBT for tax years ending in 1999 through 2004. Taxation assessed Subsidiary for the payment of taxes, penalties and interest. Taxation included the royalties that Subsidiary received from Lorillard in determining the amounts owed. Subsidiary appealed to the Tax Court claiming it did not owe CBT, but this argument was rejected. See Lorillard Licensing Co., LLC v. Dir., Div. of Tax'n (Lorillard I), 28 N.J. Tax 590 (Tax 2014), aff'd, 29 N.J. Tax 275, 277-78 (App. Div. 2015).

Lorillard filed CBT returns in New Jersey. Lorillard, 31 N.J. Tax at 158. It was required by N.J.S.A. 54:10A-4.4(b) to "add back" to its "earned net income" royalty payments it made to related members, such as Subsidiary. While Lorillard I was pending, Lorillard filed an amended CBT return for 2007, requesting a refund of $4,297,701 for the CBT it paid attributable to royalties to Subsidiary from 2002 through 2005. In April 2007, defendant denied this request because Lorillard I was still pending. Ibid.

In July 2007, Lorillard filed a complaint in the Tax Court against defendant. Count One claims that N.J.S.A. 54:10A-4.4(b) (the Add Back statute) is unconstitutional on its face. Count Two alleges the statute is unconstitutional as applied. Count Three alleges that it was an error to deny

4

Lorillard's request for a refund because the Add Back statute and its implementing regulation are unreasonable. Count Four alleges that defendant abused his discretion by denying Lorillard's refund. Count Five alleges that defendant's denial of its refund claim is unconstitutional. Count Six alleges that defendant's denial "violated the square corners doctrine." Lorillard filed a motion for summary judgment in 2008.

Subsidiary changed course in 2009 by filing CBT returns under the 2009 Tax Amnesty program for tax years 1999 through 2004. Lorillard requested an expedited refund of the CBT it had paid on royalties to Subsidiary. Taxation issued refunds to Lorillard in 2010, but only for a portion of what Lorillard requested. The amount that was not refunded, and which remains in dispute for tax years 2002 through 2005, is $1,495,424.

Once it was resolved that Subsidiary was to file CBT returns, the parties filed additional briefs regarding Lorillard's summary judgment motion, and the Tax Court heard oral argument. On February 28, 2019, it issued an order granting summary judgment and published its decision. See Lorillard, 31 N.J. Tax at 153-74. Lorillard was granted a full refund of CBT attributable to the royalties it paid to Subsidiary for tax years 2002 through 2005. Defendant appealed the summary judgment order.

Lorillard filed a new claim seeking a refund of $2,196,024[2] in corporate taxes for tax years 2007 through 2010 based on the same reasons. Defendant denied this request. Lorillard filed a complaint in the Tax Court. On July 19, 2019, the Tax Court entered an order and final judgment, disposing of the case on the same bases as the February 28, 2019 summary judgment order because "all material relevant facts concerning the issue of the extent of royalty deduction to be added back are materially similar to the facts in the instant matter." Defendant appealed the order and Lorillard cross-appealed.

## B.

The Corporate Business Tax Act (CBTA), N.J.S.A. 54:10A-1 to -40, imposes a CBT on non-exempt domestic or foreign corporations that have a nexus with New Jersey. N.J.S.A. 54:10A-2. The CBT "is assessed based on a corporation's entire net worth and entire net income." Whirlpool Props., Inc. v. Dir., Div. of Tax'n, 208 N.J. 141, 153 (2011). A corporation pays CBT based on its allocation factor that is determined by taking into consideration its New Jersey payroll, property and sales. N.J.S.A. 54:10A-6. "The purpose of the allocation factor is to limit application of the [CBTA] to only that income that has a sufficient nexus to New Jersey to satisfy constitutional constraints on State

---

[2] We use the figure set forth in Lorillard's brief.

A-3444-18

taxation." Lorillard I, 28 N.J. Tax at 599. N.J.S.A. 54:10A-8 (Section Eight) "authorizes [defendant] to exercise discretion to adjust a taxpayer's apportionment formula." Whirlpool, 208 N.J. at 145.

The starting point in the calculation is the corporation's "entire net income" as defined in N.J.S.A. 54:10A-4(k). This is deemed by the CBTA to be "equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report. . . ." Whirlpool, 208 N.J. at 155.

In 2002, the Business Tax Reform Act (BTRA) amended the CBTA. L. 2002, c. 40; see Lorillard, 31 N.J. Tax at 164. The sponsor's statement for the Senate bill stated it "revises and updates the corporation business tax to close a number of loopholes and limit certain tax benefits." Sponsor's Statement to S. 1556 51 (May 30, 2002). It was critical of tax loopholes which do not allow the CBT to "reach some out-of-state companies that do business here," and permit "multi-state corporations to transfer their profits to related out-of-State and offshore companies" and "reduce their net income to little or nothing, thus avoiding the New Jersey taxation." The purpose was to provide "a level playing field for all businesses, large and small, that invest in New Jersey, employ our

citizens and do business here." The sponsor's statement for the Assembly bill expressed similar objectives. Sponsor's Statement to A. 2501 51 (June 6, 2002).

The Senate Budget and Appropriations Committee's statement noted that one of the loopholes to be closed by the legislation was a deduction for "royalties and other intangible expenses and costs . . . when paid to affiliates." S. Budget & Approps. Comm. Statement to S. 1556 2 (June 27, 2002). They would remain permissible "in areas that are established as 'non-tax avoidance' situations." Ibid. To close loopholes, the legislation included language "limit[ing] the ability of a taxpayer to deduct royalties . . . when paid to affiliates." Lorillard, 31 N.J. Tax at 164 (quoting from Assembly Budget Comm. Statement to A. 2501 2 (June 27, 2002)). The Director "would have the 'authority to determine . . . whether a taxpayer has met its evidentiary burden of establishing by clear and convincing evidence that the addback of an expense is unreasonable.'" Ibid. The Director also could determine "that it is appropriate to enter into agreements or compromises with the taxpayer to produce an equitable level of taxation." Ibid.

The CBTA defines "intangible expenses and costs" to include royalties. N.J.S.A. 54:10A-4.4(a). Effective in July 2002, the CBTA was amended by the BTRA to provide that

> [f]or purposes of computing its [ENI] . . . , a taxpayer
> shall add back otherwise deductible . . . intangible

8

> expenses and costs directly or indirectly paid, accrued or incurred to, or in connection directly or indirectly with one or more direct or indirect transactions with, one or more related members.
>
> [N.J.S.A. 54:10A-4.4(b) (the Add Back statute).]

There are three exceptions to the Add Back statute. Relevant here, the add backs required in subsection b "shall not apply if . . . the taxpayer establishes by clear and convincing evidence, as determined by the director, that the adjustments are unreasonable . . . ." N.J.S.A. 54:10A-4.4(c)(1)(b). Thus, the add back can be reduced for amounts that are "unreasonable." Ibid.

Defendant promulgated regulations in 2003 to address the CBTA's exception for unreasonableness in related party transactions. See N.J.A.C. 18:7-5.18(b). "The purpose of the . . . regulation is avoidance of double taxation." Lorillard, 31 N.J. Tax at 168. The regulation restates the statutory criteria. N.J.A.C. 18:7-5.18(a)(1). N.J.A.C. 18:7-5.18(b) provides that "intangible expenses and costs directly or indirectly paid . . . in connection with a transaction with one or more related members shall not be deducted in calculating [ENI]" with certain exceptions. The add back is not required "[i]f the taxpayer establishes, to the satisfaction of the [d]irector, that the disallowance of a deduction is unreasonable by showing the extent the related party pays tax in

New Jersey on the income stream." N.J.A.C. 18:7-5.18(b)(3).[3] Thus, as defendant argued, "clear and convincing evidence" as referenced in the Add Back statute could be shown to "the extent that a related-entity payee pays tax in New Jersey on the royalties." Defendant argues the regulation was to prevent multi-entity businesses from reducing the amount of their CBT by artificially

[3] This regulation was amended effective April 8, 2020. Currently, the add back may not be required,

> [i]f the taxpayer establishes, to the satisfaction of the [d]irector, that the adjustments are unreasonable by clear and convincing evidence, and any one of the following circumstances applies:
>
> > i. Unfair duplicate taxation;
> >
> > ii. A technical failure to qualify the transactions under the statutory exceptions;
> >
> > iii. An inability or impediment to meet the requirements due to legal or financial constraints;
> >
> > iv. An unconstitutional result; or
> >
> > v. The transaction is equivalent to an unrelated loan transaction;
>
> [N.J.A.C. 18:7-5.18(b)(3).]

10

A-3444-18

shifting income from a higher allocation factor company to a related company with a lower allocation factor.

Taxation developed a new tax reporting schedule in connection with promulgation of the regulation. Schedule G-2 measures the "extent that the payee pays tax" to avoid double taxation by providing a formula that "can determine whether or not certain related party transactions, in fact, do qualify for deductibility as exceptions to the addback rule." 35 N.J.R. 1573(a) (April 7, 2003).

Schedule G-2 calculates the "unreasonableness exception" for the payor — in this case, Lorillard — based on the allocation factors of the payor and payee. The payor can take exception as unreasonable from the add back to the extent the payee paid tax to New Jersey on the royalty income. See N.J.A.C. 18:7-5.18(b)(3). If the payor and payee have the same allocation factors, then the payor can take exception to the add back. If the payor's allocation factor is larger than the payee, then the payor will only have a partial exception to the addback based on the payee's taxes. Lorillard, 31 N.J. Tax at 161. Here, Lorillard claimed a refund for tax years 2002 through 2005 of $4,297,701 but was refunded $2,802,277 because Subsidiary had a lower allocation factor than Lorillard. Lorillard, 31 N.J. Tax at 162-63.

C.

The Tax Court granted Lorillard's motion for summary judgment. Lorillard, 31 N.J. Tax at 174. In reaching its decision, the Tax Court found that it was not "realistic" for a parent and a subsidiary to have the same allocation factors. Lorillard, 31 N.J. Tax at 172. The Tax Court found that BTRA's goals were not "frustrated because Subsidiary's allocated royalty income does not match [Lorillard's] royalty deduction solely due to the difference in their respective allocation factors . . . ." Ibid. However, it found this was not a reason to allow only a portion of the royalty deduction to be added back. Ibid.

The Tax Court was critical of Taxation for not explaining why the difference between the allocation factors raised concerns under the BTRA. It found "absent" certain allegations and claims such as that Subsidiary's "reporting and tax payments on the royalty deduction" in other states was not "clear and convincing evidence"; that what Subsidiary paid in CBT was irrelevant to any inquiry about unreasonableness; or that Lorillard must provide some clear and convincing evidence. Ibid. In the absence of these, the Tax Court found that Taxation's "determination to deny a portion of [Lorillard's] refund claims [was] not well-founded. " Ibid.

12

The Tax Court found that Subsidiary paid CBT to New Jersey using its allocation factor based on the royalty payments from Lorillard. Because defendant was not arguing that Subsidiary's allocation factor did not "properly represent its allocable income to New Jersey," the Tax Court rejected defendant's argument that "there was a mismatch of income and expense solely due to the difference in the unchallenged allocation factors of [Lorillard] and Subsidiary." Ibid. The Tax Court concluded defendant did not "exercise its discretion fairly by deeming only a portion of the royalties paid by [Lorillard] to Subsidiary as excepted from addback." Ibid.

On February 28, 2019, the Tax Court granted summary judgment to Lorillard requiring defendant to refund the remainder of Lorillard's claim for tax years 2002 through 2005. On July 19, 2019, the Tax Court entered an order and final judgment in Lorillard's favor for tax years 2007 through 2010 based on its reasoning in Lorillard. 31 N.J. Tax at 166-74.

D.

Defendant appeals the Tax Court orders raising these issues:

POINT I

THE TAX COURT INCORRECTLY INTERPRETED THE STATUTE AND TAXATION'S REGULATION AND GAVE INSUFFICIENT DEFERENCE TO TAXATION.

13

A.  The Tax Court Misinterpreted the Plain Language
    of the Statute and Regulation.

B.  The Tax Court Accorded Taxation Insufficient
    Deference.

POINT II

THE TAX COURT'S HOLDING UNDERMINES THE
PURPOSE OF THE BTRA TO PREVENT SHIFTING
INCOME AWAY FROM NEW JERSEY THROUGH
RELATED-ENTITY ROYALTY PAYMENTS.

Lorillard files a cross-appeal from the Tax Court orders because they do

not address the constitutional issues it raised in the summary judgment motion.

It argues:

POINT I

THE STANDARD OF REVIEW IS DE NOVO

A.  The Review of a Summary Judgment Order Is a
Legal Question.

B.  The Standard of Review Is De Novo and the Tax
Court Is Entitled to Deference on Questions of Law.

C.  Defendant's Interpretation of Tax Statutes Is Not
Binding as Ruled in the Supreme Court's Decisions.
POINT II

DEFENDANT'S REGULATION AND SCHEDULE
G-2 ARE NOT REASONABLE INTERPRETATIONS
OF      THE      ADDBACK      STATUTE      AND

14

UNLAWFULLY NARROW THE UNREASONABLE EXCEPTION AS APPLIED TO LORILLARD

POINT III

THE TAX COURT CORRECTLY INTERPRETED THE UNREASONABLE EXCEPTION IN THE ADDBACK STATUTE.

A. The Tax Court Did Not Endorse an "All-or-Nothing" Unreasonable Exception.

B. Though Defendant Received Deference from the Tax Court, Defendant's Position Was Not a Fair Exercise of Its Discretion.

C. The Tax Court's Proper Interpretation of the Addback Statute Does Not Undermine the Purpose of the BTRA.

POINT IV

ALTERNATIVELY, LORILLARD'S REMAINING REFUND CLAIMS SHOULD BE GRANTED BECAUSE DEFENDANT'S REGULATION AND SCHEDULE G-2 ARE UNCONSTITUTIONAL

A. Defendant's Regulation and Schedule G-2 Are Unconstitutional Because They Are Discriminatory

B. Defendant's Regulation and Schedule G-2 Are Unconstitutional Because They Indirectly Tax the Out-of-State Activities of Licensing that New Jersey Cannot Tax Directly.

C. Defendant's Regulation and Schedule G-2 Are Unconstitutional Because They Result in Gross

A-3444-18

Distortion and Taxation that Is Out of All Appropriate Proportion to Lorillard's Activities in New Jersey.

POINT V

DEFENDANT'S CONTINUED DENIAL OF LORILLARD'S REMAINING REFUND CLAIMS IS A FAILURE TO TURN SQUARE CORNERS.

II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). We do not defer to a trial court's "interpretation of the law and the legal consequences that flow from established facts." State v. Harris, 181 N.J. 391, 419 (2004) (quoting Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The starting place is the BTRA. It was "enacted to address declining revenues despite economic expansion based on 'evidence that large corporations with apparently substantial economic activity in this State and substantial profit

have managed to avoid having any of this income become taxable by New Jersey.'" Springs Licensing Grp., Inc. v. Dir., Div. of Tax'n, 29 N.J. Tax 1, 8-9 (Tax 2015) (quoting Statement to Assembly No. 2501). The BTRA was intended to close loopholes.

One such closure was "limit[ing] the ability of a taxpayer to deduct royalties . . . when paid to affiliates." Ibid. The Add Back statute requires a taxpayer to "add back" to its earned net income the royalties that it paid to a related entity. N.J.S.A. 54:10A-4.4(b). However, because New Jersey is a "separate entity state," the royalty income received by the related entity payee also is taxed. Springs Licensing, 29 N.J. Tax at 12. "[T]he Legislature's response to the specter of double taxation [was] the ability of the payor to claim an exception to the add-back as being 'unreasonable.'" The statute permits a taxpayer to reduce the add back by amounts, which are "unreasonable," but the Legislature did not define what type or amount of an add back was unreasonable.

"When an administrative agency that is charged with enforcing a statute interprets that statute, we give substantial deference to the agency's interpretation." Oberhand v. Dir., Div. of Tax'n, 193 N.J. 558, 568 (2008). This applies "when the Director's expertise is exercised in the 'specialized and complex area' of the tax statutes." Taylor v. Dir., Div. of Tax'n, 422 N.J. Super.

336, 341 (App. Div. 2011) (quoting Metromedia v. Dir., Div. of Tax'n, 97 N.J. 313, 327 (1984)). However, an agency cannot interpret a statute to extend it beyond that permitted by the language of the statute. Oberhand, 193 N.J. at 568. "Thus, if the agency interpretation of a statute is plainly at odds with the plain meaning of the statute, the agency interpretation will be set aside." Ibid. Where the agency's interpretation "is consistent with a plain reading of the statute," the reviewing court should "give deference to the [agency]'s interpretation of the" statute and "accept that interpretation as the one intended by the Legislature." Id. at 569.

Defendant promulgated regulations to implement the Add Back statute's exception for amounts that are "unreasonable." Lorillard argues defendant's regulations and tax form Schedule G-2 are not reasonable interpretations of the statute.

Regulations that are "consistent with statutory authority are presumptively valid and should also receive deference." United Parcel Gen. Servs. Co. v. Dir., Div. of Tax'n, 430 N.J. Super. 1, 8 (App. Div. 2013). The presumptive validity of administrative actions means that "the burden of proving otherwise is on those challenging such action." Hills Dev. Co. v. Twp. of Bernards, 103 N.J. 1, 45 (1986). However, "an administrative agency may not, under the guise of

interpretation, extend a statute to give it a greater effect than its language permits." GE Solid State v. Dir., Div. of Tax'n, 132 N.J. 298, 306 (1993). Nor may an agency issue a regulation that is outside "the fair contemplation of the delegation of the enabling statute." N.J. State League of Mun. v. Dep't of Cmty. Affs., 158 N.J. 211, 222 (1999) (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561 (1978)).

Applying these standards, we conclude the Tax Court erred by granting summary judgment to Lorillard. There is nothing unreasonable about allowing an exception to the add back to the extent the related party paid taxes in New Jersey to avoid possible double taxation. Defendant's regulation defines one means by which the add back is unreasonable, e.g., to the extent the related entity paid New Jersey taxes. Defendant granted Lorillard's refund request, corresponding to Subsidiary's CBT payments, by using a comparison of the allocation factors between the payor (Lorillard) and payee (Subsidiary). As the State described it, "Taxation granted parent a refund for those amounts corresponding to [S]ubsidiary's CBT payments because Taxation determined, using Schedule G-2, that it would be unreasonable for parent to pay CBT on income paid to [S]ubsidiary as royalties to the extent that the [S]ubsidiary paid CBT on the royalties." The tax on Lorillard's add back that was not excepted as

19

unreasonable was related to its activity in New Jersey based on its allocation factor.

The purpose of the BTRA — as the Tax Court acknowledged — was to close a loophole on tax avoidance. There was nothing unreasonable about defendant's decision to grant the exception only to the extent of the New Jersey taxes paid by Subsidiary. This was a balanced approach. It considered the need to achieve the intent of the BTRA to close loopholes and the need by the filer to avoid an unreasonable add back. Lorillard is not precluded from showing that it is unreasonable in some manner not to refund the balance of the remaining add back based on facts special to its situation.

The Tax Court appeared to shift the burden from Lorillard to defendant. The statutes give the taxpayer the burden of establishing an exception to the disallowance of deductions: "adjustments . . . shall not apply if . . . the taxpayer establishes by clear and convincing evidence, as determined by the director, that the adjustments are unreasonable. . . ." N.J.S.A. 54:10A-4.4(c)(1)(b). If further adjustment was needed, Lorillard was not precluded from requesting this.

Lorillard claims that Schedule G-2, which is a tax form referenced in the rule proposal, should have been promulgated as a regulation because of its reference to and then application of allocation factors. See 35 N.J.R. 1573, 1575

20

A-3444-18

(April 7, 2003) (providing with reference to subsection "(b)3" of the N.J.A.C. 18:7-5.18 that this subsection "allows the deduction of costs if disallowance would be unreasonable since the payee paid tax to New Jersey on the same income stream," citing "Schedule G-2, Part II, Exception 2"). We disagree. It could be fairly inferable from the Add Back statute that the amount up to the tax paid by a related party payee might be considered as unreasonable and subject to exception, and thus that a regulation was not needed to allow an exception for this amount. See Metromedia, 97 N.J. at 329 (providing that rulemaking generally is not necessary for "[a]n agency determination that is . . . obviously inferable from the specific language of the enabling statute"). Lorillard obtained a refund for the amount of tax that was paid by its related party. What is in dispute is the amount of a refund beyond this amount.

The Tax Court never reached the constitutional issues because of its determination that defendant did not exercise appropriate discretion. Lorillard, 31 N.J. Tax at 174. In light of our decision, these constitutional issues require consideration. The Tax Court should decide them in the first instance. We decline to exercise our original jurisdiction to decide the constitutional questions that were raised. We have determined to return the cases to the Tax Court for consideration of these issues because its familiarity with the tax issues in this

21

context will be helpful.  Given the amendment of N.J.A.C. 18:7-5.18 in the interim, we also are unable to determine on this record if the constitutional issues are now moot.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION