**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1966-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TODD C. FORD,

    Defendant-Appellant.

_____

Submitted April 9, 2025 – Decided August 13, 2025

Before Judges Mayer, Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 19-12-1159.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, of counsel and on the briefs).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Kimberly P. Will, Assistant Prosecutor, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for amicus curiae Attorney General of New Jersey (Jeremy

M. Feigenbaum, Solicitor General, and Liza B. Fleming, Deputy Attorney General, on the brief).

PER CURIAM

Following denial of his motion to suppress evidence seized without a search warrant, defendant Todd C. Ford pled guilty to second-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(b)(2) (count five), and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count fourteen), charged in a fourteen-count Cumberland County indictment. The indictment also charged Andrea Jones, the mother of defendant's child, and Marcel C. Nelson, neither of whom is a party to this appeal. Defendant also pled guilty to third-degree possession with intent to distribute CDS and second-degree certain persons, charged in a separate indictment, but does not challenge those convictions on appeal.

Under the terms of the negotiated plea agreement, defendant preserved the right, prior to sentencing, to file a motion to dismiss the certain persons counts pursuant to the United States Supreme Court's decision in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022), and the Third Circuit's decision in Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023) (Range I). Defendant also preserved the right to appeal an adverse decision on the dismissal motion. See R. 3:9-3(f).

2

A-1966-23

After denying the motion, the court sentenced defendant to an aggregate prison term of eight years, with a five-year parole disqualifier. Pursuant to the terms of the plea agreement, the court dismissed the remaining counts charged in both indictments.

On appeal, defendant raises the following points for our consideration:

POINT I

THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE POLICE FAILED TO GET KNOWING AND VOLUNTARY CONSENT FROM THE HOMEOWNER.
[(Partially raised below)]

A.    The State Failed To Establish That The Homeowner Validly Consented To The Police Entry Into Her Home.
[(Not raised below).]

B.    Alternatively, the Trial Court Erred in Crediting the Officers' Testimony Over The Homeowner's.

POINT II

THE CERTAIN PERSONS GUN CHARGE MUST BE VACATED BECAUSE IT VIOLATES DEFENDANT'S SECOND AMENDMENT RIGHTS.

Unpersuaded by defendant's renewed and belated contentions, we affirm.

I.

We first address defendant's challenges to the judge's decision on the suppression motion. Sometime after he was indicted, defendant moved to suppress a firearm and narcotics seized from Jones's apartment, arguing Jones's consent "was not voluntary [and] knowing." Jones joined the motion.

During the one-day testimonial hearing, the State presented the testimony of New Jersey State Police (NJSP) Sergeant Jon Walker, assigned to the Trafficking South Unit (TSU). The State also introduced into evidence the consent to search form signed by Jones and the audio recording of her post-consent statement to police.[1] Defendant did not testify but called Jones on his behalf.

Walker testified, while investigating Nelson for suspected drug trafficking, TSU members learned defendant was Nelson's supplier. On September 25, 2019, TSU members obtained search warrants for a Millville residence on Fifth Street and a car registered to Jones at a Millville address on Archer Street. Police also obtained an arrest warrant for defendant.

---

[1] Although a transcript of Jones's statement was admitted into evidence for purposes of the hearing, the transcript was not provided on appeal. Instead, defendant provided the CourtSmart recording even though Jones's statement was transcribed in the suppression hearing transcript.

According to Walker, around 1:26 p.m. on October 1, 2019, TSU members saw defendant enter the Archer Street residence, leave within the hour, travel to the Fifth Street residence, and return to Jones's home with two black plastic bags. Around 2:20 p.m., defendant left the Archer Street residence and was arrested shortly thereafter while driving the car registered to Jones. Police recovered drugs during a search incident to defendant's arrest.

Walker further testified that after defendant's arrest, he and two other officers knocked on the door of the Archer Street home. Jones answered and invited the officers inside into "the living room area, right beyond the door." Jones's demeanor was "very polite." The officers did not threaten Jones. They explained they wanted to speak with her because defendant was arrested in a car registered to her. Walker stated Jones was "clueless [as] to why [defendant] was . . . arrested." Walker acknowledged "there was a young child on scene."

Walker asked Jones for permission to search her home. He testified Jones was "polite, cordial," and "didn't have a problem with it." Walker stated he did not threaten Jones to obtain her consent. Nor did he "threaten to call DYFS."[2] Walker advised Jones of her rights, reviewed the standard NJSP consent form

---

[2] DYFS, the acronym for the Division of Youth and Family Services, is now known as the Division of Child Protection and Permanency.

A-1966-23

with her, and completed the form. Walker told Jones "what [police] were searching for" and explained the scope of the search included "[t]he entire house." Jones remained receptive and signed the consent form. She did not, however, waive her right to be present during the search.

As reflected in the consent form, the search began at 2:55 p.m. and ended at 3:45 p.m. Police recovered narcotics, drug paraphernalia, currency, and a handgun from an upstairs bedroom. Walker testified Jones was calm during the duration of the encounter. At no time did Jones withdraw her consent. On cross-examination, Walker stated he did not recall whether Jones was pregnant at the time of the search.

One minute after the search was completed, Jones gave an audio-recorded Mirandized statement to police. During the nine-minute interview, Jones claimed the contraband belonged to defendant.

Jones testified to a vastly different version of the events. She asserted police approached her home after first knocking on her neighbor's door. Jones stated police entered her home without her permission and, with guns drawn and in the presence of her eight-year-old child, searched her home. She testified police asked her to sign the consent form after they searched the home. Jones further claimed if she refused consent, police threatened to: charge her with the

A-1966-23

items recovered in the upstairs bedroom; seize her vehicle for six months; call DYFS; and arrest and charge her elderly parents because the home was in their name. Police also told Jones unless she signed the consent form, she would give birth in jail. Jones testified police did not review the consent form with her.

On cross-examination, the prosecutor questioned her account, noting in her interview with police Jones stated, "Like, I'm so mad right, like so mad. Like, I was – I would let you all search. I wasn't trying to hide nothing." Jones did not explain this statement; she reiterated she felt as though she had no choice and police forced their way into the home. Jones testified she was about two or three months pregnant during the encounter and visibly pregnant. Jones acknowledged she agreed to testify to help defendant and herself.

Immediately following oral argument, the judge issued an oral decision denying the motion. The judge concluded, based on the veracity of the witnesses, the State established by a preponderance of the evidence Jones voluntarily consented to the search of her home.

II.

A.

For the first time on appeal, defendant argues the officer's entry into Jones's home constituted a warrantless search and "the State failed to establish

[Jones] consented to [their entry]."  To support his newly minted assertion, "[r]acial minorities, in particular, may feel compelled to accede without objection to police requests," defendant cites case law and news articles, not presented to the motion judge.

Although under the plain error rule we will consider allegations of error not brought to the trial court's attention that have a clear capacity to produce an unjust result, see R. 2:10-2; State v. Macon, 57 N.J. 325, 337-39 (1971), we generally decline to consider issues that were not presented to the trial court, see State v. Robinson, 200 N.J. 1, 18-19 (2009); State v. Witt, 223 N.J. 409, 418-419 (2015).  "When the parties fail to 'make known their positions at the suppression hearing so that the trial court can rule on the issues before it[,] or a 'record is barren of facts that would shed light on the [the] issue[,]' appellate courts should 'decline[] to entertain [a] belatedly related issue.'"  State v. Williams, 461 N.J. Super. 80, 93 n.7 (App. Div. 2019) (alterations in original) (quoting Witt, 223 N.J. at 418-419).

Indeed, a defendant must "state the basis of the suppression motion when making it and also introduce all of his proofs on the issue of the search and seizure at that time."  Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 3:5-7 (2025) (emphasis added) (citing State v. Bacome, 228 N.J. 94, 108

(2017)).  Defendant did not do so here.  Because defendant failed to challenge the officers' initial entry into Jones's home before the motion judge, we decline to consider his belated contentions on appeal.

B.

We consider defendant's challenges to the court's credibility and factual findings pursuant to our circumscribed review of a decision on a motion to suppress evidence.  See State v. Miranda, 253 N.J. 461, 474 (2023).  After a testimonial hearing, we "defer to the trial court's factual findings because the trial court has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Elders, 192 N.J. 224, 244 (2007)); see also State v. Locurto, 157 N.J. 463, 474 (1999) (recognizing deference is afforded because the court's findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record").

Therefore, we "must defer to the factual findings of the trial court on a motion to suppress so long as its findings are supported by sufficient credible evidence in the record."  State v. Erazo, 254 N.J. 277, 297 (2023).  Our deference includes the trial court's findings based on recorded and documentary evidence.

9

See S.S., 229 N.J. at 374-81.  "A trial court's legal conclusions, 'however, and the consequences that flow from established facts,' are reviewed de novo."  State v. Bullock, 253 N.J. 512, 532 (2023) (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

"Warrantless seizures and searches are presumptively invalid as contrary to the United States and the New Jersey Constitutions."  State v. Pineiro, 181 N.J. 13, 19 (2004); see also State v. Nelson, 237 N.J. 540, 552 (2019).  To overcome this presumption, the State must show by a preponderance of evidence the search falls within one of the well-recognized exceptions to the warrant requirement.  See State v. Bryant, 227 N.J. 60, 69-70 (2016).  A consent search is one such exception to the warrant requirement.  See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State v. Cushing, 226 N.J. 187, 199 (2016).  It is, of course, fundamental that consent to search must be voluntary. See Bustamonte, 412 U.S. at 222; see also State v. Maristany, 133 N.J. 299, 305 (1993).  Voluntariness of Jones's consent to search her home, however, is not expressly reprised on this appeal.

In the present matter, the motion judge considered the conflicting testimony adduced at the hearing and concluded Walker was more credible than Jones.  The judge reasoned Jones's testimony "[wa]s completely inconsistent

with her demeanor as reflected in the recorded statement." Noting her statement was made shortly after the officer's alleged threats, the judge found Jones sounded "polite and calm" compared with her testimony, which "was rushed, non-responsive to questions and evasive." The judge further found the consent form was consistent with Walker's testimony, noting the beginning and ending times of the search were written in different ink and by different people, dispelling Jones's testimony that "the document she signed was not filled out when she signed it."

We are satisfied the judge's credibility and factual findings are substantially supported by sufficient credible evidence in the motion record. Those findings were based on the judge's assessment of the demeanor of the witnesses as they testified, and the judge's feel of the case. See S.S., 229 N.J. at 374. We therefore defer to the judge's findings. See Erazo, 254 N.J. at 297.

III.

In his final point, defendant argues the judge erroneously denied his motion to dismiss the certain persons charge. Defendant maintains the certain persons statute violates his Second Amendment rights by categorically banning gun ownership based solely on convicted felon status. He claims the statute is facially unconstitutional and unconstitutional as applied to him. Defendant

11

seeks vacatur of his conviction. In the alternative, defendant argues a remand is necessary "for the State to try to meet its burden to justify the application of this gun regulation to [him]." To support his argument, defendant cites Range I and United States v. Duarte, 101 F.4th 657 (9th Cir. 2024) (Duarte I).

During the course of briefing on appeal, we granted the New Jersey Office of the Attorney General's (AG) motion to appear as amicus curiae. The AG joins the arguments advanced by the State, urging us to affirm the court's order. In addition, the AG provides an in-depth historical analysis supporting its position that states may disarm those who are not law-abiding and pose a risk to public safety.

While his appeal was pending, defendant filed a letter pursuant to Rule 2:6-11(d), citing the Third Circuit's decision in Range v. Attorney General United States, 124 F.4th 218 (3d Cir. 2024) (Range II). He argues, following the United States Supreme Court's remand, "the Third Circuit again held that the federal felon-in–possession statute was unconstitutional as applied to [the petitioner]." He maintains this state's certain persons statute is unconstitutional.

We review de novo a trial court's decision on a motion to dismiss an indictment when the decision "was based on the court's interpretation of the statutes pursuant to which [the] defendant was charged." State v. Bernardi, 456

N.J. Super. 176, 186 (App. Div. 2018); see also State v. S.B., 230 N.J. 62, 67 (2017) (reiterating appellate courts "review a trial court's decision to dismiss an indictment de novo [when] it [does] not involve 'a challenge to fact-finding on the part of the trial court'" (quoting State v. Cagno, 211 N.J. 488, 505 (2012))). Accordingly, "[a] trial court's 'interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Bernardi, 456 N.J. Super. at 186 (quoting State v. Pomianek, 221 N.J. 66, 80 (2015)).

Appellate courts "review the constitutionality of . . . New Jersey statutes de novo, owing no deference to the legal conclusions of the . . . trial court." State v. Higginbotham, 257 N.J. 260, 280 (2024) (citing State v. Hemenway, 239 N.J. 111, 125 (2019)). "Democratically enacted laws 'are presumed constitutional.'" Ibid. (quoting Whirlpool Props. Inc. v. Dir., Div. of Tax'n, 208 N.J. 141, 175 (2011)). We will not deem a statute unconstitutional "unless its repugnancy to the Constitution is clear beyond a reasonable doubt." Ibid. (quoting State v. Smith, 251 N.J. 244, 263 (2022)).

The Second Amendment of the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend

13                                                                         A-1966-23

II. Since 2008, the United States Supreme Court has explored the extent to which states may regulate an individual's right to bear arms, culminating in its 2022 Bruen decision.  See Dist. of Columbia v. Heller, 554 U.S. 570, 636 (2008) (holding the Second Amendment protects the ownership of "handguns held and used for self-defense in the home"); McDonald v. City of Chicago, 561 U.S. 742, 750 (2010) (extending the Heller decision to the states).

In Bruen, the Court overturned a New York state licensing scheme requiring those seeking public carry licenses to provide a special justification for self-defense.  597 U.S. at 11.  After engaging in a lengthy historical analysis, the Court held "New York's proper-cause requirement violate[d] the Fourteenth Amendment in that it prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  Id. at 71. However, the Court recognized a state may "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

Two years later, in United States v. Rahimi, 602 U.S. 680 (2024), the United States Supreme Court held 18 U.S.C. § 922(g)(8), prohibiting individuals

14                                                          A-1966-23

subject to domestic violence restraining orders from possessing firearms, comported with the Second Amendment.  Id. at 699.  Relevant here, the Rahimi Court stated the appellant's facial challenge to the statute "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'"  Id. at 693 (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  "That means that to prevail, the Government need only demonstrate that Section 922(g)(8) is constitutional in some of its applications."  Ibid.

The Rahimi Court noted "the Government offer[ed] ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others."  Ibid.  The Court explained that historical "surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.  Section 922(g)(8) is by no means identical to these founding era regimes, but it does not need to be."  Id. at 698.  "Section 922(g)(8) restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do.  Unlike the regulation struck down in Bruen, Section 922(g)(8) does not broadly restrict arms use by the public generally."  Ibid.

15

New Jersey's certain persons statute provides, in pertinent part:

A person having been convicted in this State or elsewhere of the crime, or an attempt or conspiracy to commit the crime, of <u>aggravated assault</u>, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault, bias intimidation . . . , carjacking . . . , gang criminality . . . , racketeering . . . , terroristic threats . . . , unlawful possession of a machine gun . . . , <u>unlawful possession of a handgun</u> . . . , unlawful possession of an assault firearm . . . , leader of firearms trafficking network . . . , endangering the welfare of a child . . . , stalking . . . , who purchases, owns, possesses or controls a firearm is guilty of a crime of the second degree and upon conviction thereof, the person shall be sentenced to a term of imprisonment by the court.

[N.J.S.A. 2C:39-7(b)(1) (emphasis added).]

Although the <u>Rahimi</u> Court did not expressly address the constitutionality of 18 U.S.C. § 922(g)(1),[3] the federal statute analogous to New Jersey's certain persons statute, both decisions cited by defendant, <u>Range I</u> and <u>Duarte I</u>, were

---

[3] 18 U.S.C. § 922(g)(1) provides, in pertinent part:

It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[] . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

16

vacated and remanded for reanalysis under Rahami.  See Garland v. Range, ___ U.S. ___, 144 S. Ct. 2706 (2024); United States v. Duarte, 108 F.4th 786 (9th Cir. 2024) (Duarte II).[4]

On remand in Range II, the Third Circuit considered the appellant's criminal history consisted of a single conviction in 1995 for "making a false statement to obtain food stamps, . . . minor traffic and parking infractions[,] and a summary offense for fishing without a license."  124 F.4th at 222-23.  Noting its decision in Range II was "a narrow one," the court held the government failed to demonstrate "a longstanding history and tradition of depriving people like Range of their firearms."  Id. at 232 (emphasis added).

Less than two months later in Pitsilides v. Barr, 128 F.4th 203 (3d Cir. 2025), the Third Circuit explained "[c]ourts adjudicating as-applied challenges to § 922(g)(1) must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he [or she] meets the threshold for continued disarmament."  Id. at 212.  The court noted

---

[4]  On remand, the Ninth Circuit held "§ 922(g)(1) is not unconstitutional as applied to non-violent felons like [the defendant]." United States v. Duarte, 137 F.4th 743, 748 (9th Cir. 2025).

A-1966-23

"some offenses may offer conclusive evidence that someone poses such a danger." Id. at 211.

In the present matter, defendant's facial challenge fails because he cannot show there exists "no set of circumstances . . . under which the [statute] would be valid." See Salerno, 481 U.S. at 745. Pursuant to Rahimi and Range II "'disarmament is justified as long as a felon continues to present a special danger of misus[ing firearms],' in other words, when he [or she] would likely 'pose[] a physical danger to others' if armed." Pitsilides, 128 F.4th at 210 (first and third alterations in original) (citation omitted) (first quoting Rahimi, 602 U.S. at 698; and then quoting Range II, 124 F.4th at 232).

Defendant's as-applied challenge also lacks merit. Unlike the successful as-applied challenge in Range II, where the appellant had one previous non-violent felony conviction for false statement, defendant's criminal convictions are more extensive and violent. Those convictions include: fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and three counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Defendant also was convicted of third-degree perjury, N.J.S.A. 2C:28-1(a), and

amassed a litany of juvenile adjudications for violent crimes and weapons offenses.

Based on the circumstances presented in this case, including defendant's criminal record for violent crimes and weapons offenses, we discern no basis to disturb his certain persons conviction.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1966-23